# CHURCHWELL et al. v. CALLENS et al.—252 S. W. (2d) 131.

**Western Division at Jackson. June 19, 1952.**

Petition for Certiorari denied by Supreme Court, October 10, 1952.

P. M. Harbert, of Savannah, for appellant.

Ross & Ross, of Savannah, for appellee.

SWEPSTON, J.  This appeal is by T. L. Callens from a decree of the Chancellor adjudging him guilty of contempt of court for wilful failure to obey a mandatory injunction, for which he was assessed a fine of $10.

On July 1, 1950 E. K. Churchwell and others filed their bill in the Chancery Court alleging that respondent, Callens, had constructed a fence across a road, of which complainants were entitled to the use and that said obstruction would cause them irreparable damage, that an emergency exists by reason of facts alleged in the bill and they, therefore, prayed for an injunction restraining respondents, Callens and his wife, from continuing said obstruction and a mandatory injunction compelling respondents to remove said fence and all other obstructions and that same "be immediately issued and served."

Before filing, the bill was presented ex parte and without notice to the County Judge of Hardin County at Savannah, wherein the lands of both parties are situate and where the bill was filed, who issued a fiat to the Chancery Clerk for the issuance of said injunction as

prayed in the bill, upon bond in the sum of $500. The bond was given and the Clerk issued the injunction immediately as prayed in the bill and commanded respondents, etc. "to immediately remove said fence from across said road."

The writ was served on respondent the same day about nightfall, which was Saturday. Next morning Mr. Callens went to Savannah to consult his counsel, but was instructed to come back Monday morning, which he did. Counsel immediately called the solicitor for complainants in an effort to obtain an immediate hearing before the Chancellor at Paris for modification or dissolution of the injunction. Upon said solicitor's refusal of a hearing except on the usual five days notice, said notice was given for a hearing at Paris on July 8.

On July 5 complainants filed a petition for attachment of the body of respondent for contempt and said attachment was served upon Mr. Callens requiring him to appear at Jackson on July 8 under bond of $1000, which was given.

Respondents filed their answer to the bill on July 4 and Callens filed his answer to the contempt petition on July 8 and on the same date by agreement of the parties (R. 60) the motion to dissolve or modify the injunction was heard and overruled; the Court then held that it appeared from the answer of defendants that they had not obeyed the injunction and they were ordered to comply with same by noon of July 10, but upon insistence of complainants for immediate removal of the fence one of the complainants was allowed to remove same instanter; the hearing on the contempt petition was then continued over to the regular term in Hardin County and was so heard on October 25. On that date the matter was heard on the petition and answer, the affidavits filed on

behalf of complainants and the oral proof in open court. The order on said hearing recites that defendants failed to comply with the writ of injunction from July 1 to July 8, ''and the court finds that the answer of defendant showed no sufficient excuse for not complying with said writ'' and the fine of $10 was assessed.

There are nine assignments of error with nine parts to the third.

It will not be necessary or appropriate to discuss every question in detail, but at the threshold of the appeal is the attack on the constitutionality of the statute by virtue of which the County Judge issued the fiat for the injunction.

If the attack is successful, the fiat was utterly void for want of jurisdiction of the judge awarding it and disobedience of the injunction is not a contempt. Howell v. Thompson, 130 Tenn. 311, 170 S. W. 253; 12 Am. Jur. 408, Sec. 26; 17 C. J. S., Contempt, Sec. 14, p. 19; Gibson's Suits in Chancery, Sec. 814, note 43.

A void judgment is no judgment at all and binds nobody.

It is therefore, necessary to decide the constitutional question.

The attack is made on Chapter 329, Private Acts of 1937 as being in violation of Section 17, Article 2 of the State Constitution in that it is said ''to embrace more than one subject, or the subject is not embraced in the title.''

The caption of this act is as follows:

''An Act to be entitled An Act to amend an Act entitled An Act to create the office of County Judge for Hardin County, and to define the powers and prescribe the qualifications and duties of the County Judge, being Chapter 425 of the Acts of 1907, of

the Fifty-fifth General Assembly of the State of Tennessee, passed on the 11th day of April, 1907."

Section 1 of this amendatory act is that Chapter 425 of the Public Acts of "1909" be amended by adding thereto, after Section 4:

"That the County Judge of said County of Hardin shall have authority, jurisdiction, and power to grant all extraordinary writs of injunction and attachments the same as the Circuit Judges and the Chancellors of the State now have, and he shall also exercise this power and authority in the same manner as the Chancellors and Circuit Judges".

It appears that Chapter 425 of the Acts of 1909 is an Act to incorporate the town of Centerville in Hickman County, but that Chapter 425 of the Acts of 1907 is the Act of which the title and subject are referred to in the caption of the amendatory act here attacked.

The basis of counsel's insistence is then that we should disregard the copious information in the caption of the amendatory act, which is strictly accurate and disregard the rational relation of the substance of Section 1 of the body of the amendatory act to the substance of Chapter 425 of the Acts of 1907, simply because the body of the amendatory act in Section 1 gives the year as 1909.

This is obviously merely a clerical error due no doubt to the fact that the Private Acts of 1907 and 1909 appear in the same volume.

It is settled in this State that the title of an Act may be looked to in aid of the construction of the body, Southern Ry. Co. v. Rowland, 152 Tenn. 243, 246, 276 S. W. 638, and to effectuate the legislative intent words may be modified, altered or supplied. Hudgins v. Nash-

ville Bridge Co., 172 Tenn. 580, 113 S. W. (2d) 738; Scales v. State, 181 Tenn. 440, 181 S. W. (2d) 621.

■ We hold the Act is constitutional.

Next it is insisted that this statute did not authorize and empower the County Judge of Hardin County to order the extraordinary process of a mandatory injunction "where property rights are largely adjudged without a hearing", and it is insisted that defendant was tried by one Court for the violation of an order made in another Court, which cannot be done.

■ As to the last statement, it is settled that the Court against which the contempt is committed is the one having jurisdiction to try it. Chaffin v. Robinson, 187 Tenn. 125, 213 S. W. (2d) 32.

Yet we think counsel misconceives the import of this statute and the character in which the Judge acted.

In granting the fiat he was not acting as the County Court of Hardin County but as the Judge thereof specially empowered to grant extraordinary writs of injunction and attachments the same as Circuit Judges and Chancellors of the state now have.

We dealt with the principles involved here in the unreported case of State ex rel. Hospital Board v. Mrs. Vernon Sneed, decided Oct. 18, 1950 (no cert. applied for).

The State filed a bill to enjoin Mrs. Sneed from operating a hospital and nursing home in alleged violation of law.

A fiat for the issuance of the injunction was obtained from Chancellor Shriver at Nashville and the papers were then transferred to the Clerk and Master of the Shelby Chancery Court where the suit was assigned to Part II of said Court, Chancellor Bejach presiding.

The injunction was issued and served on defendant. Shortly afterwards complainant obtained from Chancellor Shriver a fiat on a petition for attachment of Mrs. Sneed for alleged violation of the injunction and the papers were transmitted to the Clerk in Shelby County.

Chancellor Bejach held the fiat of Chancellor Shriver for the attachment was void for lack of jurisdiction of the case pending in Shelby County.

We held it was not void for the reasons here quoted:

"In the brief counsel relies upon Code Section 9946 which provides:

" 'The judges and chancellors shall have interchangeable and concurrent jurisdiction to grant injunctions, attachments, and all other extraordinary process, issuable out of, and returnable to, any of the circuit or chancery courts of this state.'

"In view of the holding of the Chancellor that Mrs. Sneed had not in fact violated the injunctive order and because of the rule that there is no appeal from an order discharging her as an alleged contemnor as held in Gunter v. Seaboard Copper Mining Co., 142 Tenn. 14, 215 S. W. 273, there can be no relief to appellant in this court even if the Chancellor was in error in holding the fiat of Chancellor Shriver void. Ordinarily an appellate court will not pass upon a moot question, but where the question is one of public interest and a decision would settle an important question of practice affecting public administrative bodies, the court will pass upon it. In fact we are requested to do so here for that reason.

"McCanless, Com'r, v. Klein, 182 Tenn. 631, 188 S. W. (2d) 745;

"State ex rel. v. Bush, 141 Tenn. 229, 208 S. W. 607.

"It is conceded by all parties and so stated by the Chancellor that the above quoted section authorized Chancellor Shriver to issue the fiat for the injunction on the original bill before the bill was filed in Shelby County.

"But Chancellor Bejach held that after the cause was filed and docketed in his Court, no other judge or chancellor had jurisdiction to act. Of course, it must be understood that his court was open and he was presiding and available and none other was sitting for him, because the Chancery Courts of Shelby County are never in vacation.

"The exact question for solution is: May any other Circuit Judge or Chancellor before whom the suit is pending grant a fiat upon a petition for attachment of the person for alleged contempt committed out of the presence of the Court to be returned to that Chancery Court under the authority of the above quoted Code Section?

"The question involving contempts has not been ruled on in any reported case we have been able to find. Nor are there any decisions in other States.

"At the outset, it is settled by all the authorities that the hearing on the merits of the contempt petition can be had only before the presiding judge of the Court against which the contempt is alleged to have been committed and by no other.

"The first inquiry would seem to be whether such process would fall under the definition of 'extraordinary process' as used in the Statute.

"Chancellor Gibson, (1937 ed.) Section 918.744, says:

" 'Contempts for failing to answer a bill are termed *ordinary contempts*, and all other contempts are termed *extraordinary contempts*'.

"At section 201, note 2, it is said that Rule VI, section 2 of the Chancery Rules, Code Section 10605, does not apply to ordinary contempts, upon which an attachment of the body may be issued by the master at the request of complainant.

" 'Extraordinary process' is defined as that which neither settles nor prejudices right, but is intended to preserve the status quo.'

"Troughber v. Akin, 109 Tenn. 451, 453, 467, 73 S. W. 118.

"Examples specifically named in the original statute, Ch. 4, Acts 1835-36, are writs of injunction, ne exeat, and to appoint receivers.

"Hence, it would seem reasonable to classify a writ of attachment for extraordinary contempt as an extraordinary process, which under the rule of eiusdem generis would bring it under the class or genus of things specifically named in the statute.

"Moreover, when the original Act is examined, a fiat of the kind involved would seem to be within the legislative purpose and intent. The act created three Chancellors only for the entire State and they with the Circuit Judges were given this interchangeable and concurrent jurisdiction as judges and chancellors of the whole State for the convenience of the people and for the more efficient administration of justice.

"The Act was amended by Ch. 49, acts 1871 to empower judges of criminal and special courts to grant writs for such extraordinary process. Code section 10533.

"Code Section 9717 provides that the provisions of the Code as to extraordinary process shall apply equally to equity proceedings in any court.

"Code Section 9947 provides that upon granting the fiat the judge or chancellor shall transmit the papers to the clerk of the Court to which the fiat is directed.

"The Statute first quoted has been construed not to authorize any other judge or chancellor to usurp the jurisdiction of the Chancery court in which the suit is pending so as to interfere with its judgments and decrees, but at the same time it is held that the issuance of 'extraordinary' process made returnable to that court is not such interference.

"The case nearest in point is In re Chadwell, 54 Tenn. 630, where execution on a decree of the Chancery Court at Charlotte had issued, whereupon the defendant, upon petition for an injunction to suspend the execution until the petition could be heard on its merits, obtained a fiat from the Chancellor at Nashville which was returned to the Court at Charlotte. The latter dismissed the injunction on the ground the other chancellor was without jurisdiction.

"Held, such action was not an interference with the judgment, since the matter was properly referred for determination on the merits to the court at Charlotte, and was but the exercise of a judicial function common to all judges of the State.

"In Thompson v. Menefee, 6 Tenn. App. 118, 126 (no certiorari) it was said:

" 'By Statute, Shannon's Code 5750 and 6246, the power to grant injunctions is entrusted to all our Chancellors, Circuit and Special Judges, interchangeably; and there is no statutory provision controlling

the exercise of the discretionary powers thus entrusted to all our Chancellors and judges, but the discretion is a legal discretion controlled by well settled rules, McMinnville & Manchester Railroad Co. v. Huggins, 7 Cold. 217, 226, and is subject, under Shannon's Code 6253 and 6257, to *the supervising control of the Chancellor of the Court in which the suit is pending.* See Flippin v. Knaffle, 2 Tenn. Ch. 238, 243-244'.

"The latter part of the quotation is obiter dictum, but nevertheless expresses the view that has long been entertained by the Bar.

"In Shields v. Coleman, 157 U. S. 168, 15 S. Ct. 570, 39 L. Ed. 660, the Statute above quoted was construed to be broad enough to authorize the appointment by the judge of a criminal court of Knox County of a receiver in a *pending* Chancery cause, especially since it appeared that the Chancellor had recognized the validity of it.

"Numerous cases cited in the Code under Section 9946 hold that it is proper for any chancellor to enjoin an execution from his own or another court upon the ground that same has been paid, or satisfied, or obtained by (extrinsic) fraud, or by way of equitable set off. Such is held not to be an interference with the court wherein the judgment was obtained.

"We see no difference between the arrest of a person under a writ of ne exeat and under an attachment for contempt committed out of the presence of the Court, in so far as it affects the subject person.

"In either case and in the cases of injunctions and receivers, the matter is subject to the ultimate control of the Chancellor in whose court the suit is pending and he may discharge the order theretofore made when it is returned to his court.''

■ If we were correct in the above views as to a suit already pending, it must follow logically and under long established practice under the above mentioned Code Sections that the County Judge of Hardin County, upon being presented with a Chancery bill before the same was filed, upon which he issued the fiat was acting not as the County Court but as a judge specially empowered by statute to order the issuance of extraordinary process in a suit subject to the ultimate supervision and control of the Chancellor.

If the Judge had the power and jurisdiction to issue an injunction, he necessarily had the power to issue a mandatory injunction to prevent irreparable injury under the principles set out in Gibson, Sec. 824, and this is what he in fact did and his action was not a decision on the merits. Appellant has cited no authority to the contrary and none will be found.

All other questions raised by Assignment III except one are matters that even if erroneous and subject to correction or reversal when properly before the court on appeal, would not make the order void, but only voidable.

■ A void judgment binds nobody, but a voidable judgment binds everybody and justifies every act done under it until reversed or modified on appeal. Gibson, Sec. 814, note 43.

■ If the Court has jurisdiction of the person and of the subject matter, it is a valid order though it be erroneous, and disobedience of same by a party affected is a contempt of court. In re: Vanvaver, 88 Tenn. 334, 12 S. W. 786; Life Ins. Co. v. Fisher, 5 Hig. 232.

Such an order must be obeyed until the party obtains a dissolution or discharge, or he is in contempt. Gibson, Secs. 846 and 847; 12 Am. Jur. 408; 17 C. J. S., Contempt, Sec. 14, p. 19.

While anyone affected by an order he deems void may attack it yet he assumes the risk of error in his opinion and, if the order is ultimately held to be valid, he is subject to punishment for disobedience pendente lite.

■ The only other question under Assignment III is the charge that the Chancellor was without jurisdiction to order defendant to appear at Jackson in a different Chancery Division.

If erroneous, which we need not decide, it was harmless, because at Jackson on July 8, the Chancellor did not adjudge defendant in contempt, but continued the matter over to October 25 and heard the proof and made the adjudication in Hardin County.

Hence, we overrule all of Assignment III, and for like reasons Assignments IV, VII, VIII and IX, all complaining of the failure to grant a new trial.

■ Assignment III-(a) complains of the admission in evidence of certain affidavits. If erroneous, such action was not prejudicial, because the Court expressly found defendant guilty on his own answer (R. 69, top).

■ We think correctly so from an inspection of the answer. Advice of counsel is no excuse for failure to obey an order, but may be considered in mitigation of the offense, if done in good faith. 17 C. J. S., Contempt, Sec. 38, p. 52. Gibson, Sec. 847.

■ Assignment I that there is no evidence to support the judgment must be overruled for the same reason as III(a).

■ Assignment II that because the record shows the land belongs to Mrs. Callens and that the fence was constructed by workmen and not by Mr. Callens is wholly without merit, because his answer shows he was the moving spirit of it all.

Assignments V and VII complain that the injunction as issued by the Clerk is not the same as that prayed in the bill. It may be readily conceded that, if such were the case, it would be unauthorized, because the Clerk has no power to do other than such as is ordered by the Chancellor.

· We do not think, however, we have that situation. Other than a statement in the injunction about the length of user of the road, which will be disregarded as surplusage, the two are in substance identical, although slightly different in part in phraseology. Counsel in attempting in his assignment V to quote the prayer omits a paragraph of same.

It is further said that while the prayer was that the injunction "be immediately issued and served", the Clerk erroneously ordered that the obstruction be "immediately" removed; that this was unauthorized and was too indefinite as to time, because the writ was served at night.

It is axiomatic that every injunction is effective immediately upon service or knowledge of same, unless a certain later time be specified, so the insertion of the word in the writ was unnecessary. Gibson, Sec. 845-847.

It is unnecessary on this record for us to attempt to define the word, because the fact is defendant suffered from no uncertainty but delayed compliance on advice of counsel.

All assignments are overruled and the judgment of the Chancery Court is affirmed with costs against appellant.

Anderson, P. J., and Baptist, J., concur.

We should have stated that the appeal in this case was taken directly to the Supreme Court. That Court, without a written opinion or memorandum, transferred it to this Court. Otherwise we would not have presumed to have decided the constitutional question.