# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

October 21, 1998

Cecil W. Crowson
Appellate Court Clerk

JANET ANN YOUNG, )
 )
    Plaintiff/Appellant, ) Coffee Chancery
 ) No. 96-250
VS. )
 ) App. No.
JAMES ROBERT YOUNG, ) 01A01-9801-CH-00047
 )
    Defendant/Appellee. )

APPEAL FROM THE CHANCERY COURT FOR COFFEE COUNTY
AT MANCHESTER, TENNESSEE
THE HONORABLE JOHN W. ROLLINS, JUDGE

For Plaintiff/Appellant:

W. David Kelley
Haynes Hull Rieder & Ewell
Tullahoma, Tennessee

Randall W. Morrison
Tullahoma, Tennessee

For Defendant/Appellee:

Robert L. Huskey
Manchester, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves the custody of a six-year-old girl. Both parents sought a divorce and custody of the child. Following a bench trial, the Chancery Court for Coffee County granted the father the divorce and gave custody of the child to the mother solely because the father's employment as a long-haul truck driver prevented him from being the custodial parent. The father quickly obtained local employment and filed a timely post-trial motion requesting custody. The trial court granted the motion and awarded custody of the child to the father. The mother asserts on this appeal that the trial court had no basis for changing custody and that she was comparatively more fit to be the child's custodian. We have determined that the trial court's custody determination was proper.

## I.

Janet Ann Young and James Robert Young were married in Coffee County on October 20, 1990. Ms. Young worked as an administrative assistant to a physician, and Mr. Young was employed as a long-haul truck driver. Ms. Young stopped working after the parties' daughter was born in May 1992. Mr. Young continued to maintain a rigorous schedule as a truck driver, typically making two or three long distance runs each week. Consequently, throughout the marriage, Mr. Young was at home only a few hours each week when he was able to visit with his wife and daughter and sleep. Ms. Young returned to work part-time when their daughter was six months old.

The Youngs' marriage began to deteriorate in 1995 because they were not communicating effectively and were disagreeing frequently about money. When they separated in September 1995, Mr. Young moved into his mother's home in Tullahoma, and Ms. Young and the parties' daughter moved into a rented house. Mr. Young continued to drive a truck and visited his daughter on weekends. Neither party filed for divorce immediately.

In February 1996 Ms. Young's employer introduced her to David Edinger, the basketball coach at Coffee County High School. Within months, Ms. Young became

romantically involved with Mr. Edinger. Their relationship continued until Ms. Young and Mr. Edinger decided that they should stop the romance until the divorce proceedings were final. Even after this decision, Ms. Young and Mr. Edinger continued to see each other socially, and Ms. Young entertained Mr. Edinger in her home and invited him to attend gatherings with her family.

On July 22, 1996, Ms. Young filed a divorce petition in the Chancery Court for Coffee County. Mr. Young counterclaimed for divorce, alleging that Ms. Young had committed adultery. Both parties sought custody of their daughter. The trial court heard the evidence without a jury on March 12 and 13, 1997, and granted Mr. Young a divorce. The trial court expressed displeasure with the wife's extra-marital relations during the divorce proceedings but also stated that Mr. Young's employment as a long-haul truck driver interfered with his ability to be the custodial parent. Accordingly, the trial court granted Ms. Young custody of the parties daughter but also enjoined her "from having any contact whatsoever with David Eddinger [sic]."[1] In addition, the trial court informed Mr. Young:

> If your living arrangements and job circumstances change, I might consider changing custody. I don't want to lend false hope, but I will certainly take a hard look at it. I don't want to promise you anything. I don't want you to walk out of this courtroom and . . . but I'm concerned the most about the time or the absence away from – between you and your little – and there's nothing you can do about that.
>
> *          *          *
>
> . . . So it's true, you're being punished for your job and I admit it, but I don't know what else to do. My job is what is in the best interest of this little girl and I think, hopefully, I've made that decision.
>
> Unfortunately, in these situations most of the time it's not the better choice. It's the lesser of two evils sometimes and I won't comment about that here. I'm willing to take a hard look at it without giving you any absolute assurance at what I might do in six months' time or when your circumstances change.

---

[1] The trial court also warned Ms. Young that "[a]ny violation of this restraining order is an instant change of custody." In an effort to be even handed, the trial court also restrained both parties "from having a member of the opposite sex in his/her home overnight without the benefit of marriage in the presence of the minor child."

The trial court entered an order embodying its decision on April 21, 1997.

On May 14, 1997, Mr. Young moved to alter or amend the April 21, 1997 order on the ground that he had located a local job that would not require him to be out of the area and accordingly that "he is now in a better position to have custody or at least expanded visitation time with the minor child." Ms. Young also moved to alter or amend the divorce decree by deleting the prohibition against all contact with Mr. Edinger, regardless of the presence of her daughter. At the outset of a hearing on June 20, 1997, the trial court conceded that the April 21, 1997 order should be modified because the restriction against Ms. Young seeing Mr. Edinger was "overbroad."[2]

After Mr. Young testified about his new job and the arrangements he had made for his daughter's care should he be awarded custody, Ms. Young took the stand to emphasize that "[t]here's no one more important in my life than my daughter and I would give up anything or anyone for my daughter." She also volunteered that she had "not had any contact with [Mr. Edinger]" after the last hearing. On cross-examination, Ms. Young reluctantly conceded that she had, in fact, been seeing Mr. Edinger since the last hearing despite her statements to the contrary. Thereupon, the trial court ordered that Mr. Young be given custody of the parties' daughter

> Not because she's seeing the man. But if you set an example – if you'll lie to the Court, you'll lie to your child and misrepresent things and it's on that basis that I'm changing custody. Not the fact that she saw this man. It's the fact that she lied about it. That is not a good example for a parent.

In a June 26, 1997 order, the trial court directed that custody of the parties' child be transferred immediately to Mr. Young and that the sheriff accompany Mr. Young "to pick up the child and effectuate the Order."

Ms. Young retained new counsel. Later, following a hearing concerning Ms. Young's visitation rights, the trial court entered an order on November 6, 1997,

---

[2]The trial court also noted: "I don't think I have the right nor any trial judge has the right to enforce that type of order to prohibit her from any contact with his man outside the presence of that child."

concluding that Mr. Young had been awarded custody of the parties' daughter because his change of employment "enable[d] him to provide full-time on-going care for the minor child" and because "Ms. Young was found to have perjured herself on direct examination in regard to her priorities in relation to the child." The trial court later entered a final judgment reaffirming its April 21 and June 26, 1997 orders after this court dismissed Ms. Young's first appeal for lack of a final order.[3] Ms. Young has perfected this appeal.

## II.

We turn first to the proper standard of review for this case. Ms. Young asserts that we should treat this case as an appeal from an order changing custody. Therefore, she insists that the trial court's decision to award custody of the parties' daughter to Mr. Young can be upheld only if there was a material change in circumstances occurring between April 21, 1997, when the trial court entered its initial custody, and June 26, 1997, when the trial court entered its order granting Mr. Young's motion to alter or amend. We disagree that this is a change of custody case.

A court's decision with regard to custody and visitation, once made and implemented, is res judicata upon the facts in existence or reasonably foreseeable when the decision is made. *See Young v. Smith*, 193 Tenn. 480, 485, 246 S.W.2d 93, 95 (1952); *In re Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995). Thus, the courts will not change an existing custody or visitation arrangement unless the party seeking the change can demonstrate the existence of a change in circumstances materially affecting the child's interests that could not have reasonably been foreseen when the custody or visitation agreement was ordered. However, the doctrine of res judicata does not apply when the judgment sought to be given res judicata effect is not final. *See Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995); *Galbreath v. Harris*, 811 S.W.2d 88, 90 (Tenn. Ct. App. 1990); *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990). The trial court's April 21, 1997 order granting custody to Ms. Young never became final.

---

[3]*See Young v. Young*, No. 01A01-9707-CH-00329 (Tenn. Ct. App. Dec. 2, 1997).

A judgment adjudicating all the claims between all the parties becomes final thirty days after entry unless one of the parties files a timely Tenn. R. Civ. P. 59 motion. Before a judgment becomes final, the trial court may alter or amend it either on its own motion or at the request of one of the parties. *See Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976); *Newport Hous. Auth., Inc. v. Hartsell*, 533 S.W.2d 317, 320 (Tenn. Ct. App. 1975); *Moore v. Standard Life & Accident Ins. Co.*, 504 S.W.2d 373, 375 (Tenn. Ct. App. 1972). Thus, as long as its judgment has not become final, the trial court my change its mind after reconsidering the proof and the applicable law. *See Waste Management, Inc. of Tenn. v. South Cent. Bell Tel. Co.*, No. 01A01-9504-CV-00182, 1997 WL 71811, at *2 (Tenn. Ct. App. Feb. 21, 1997) (No Tenn. R. App. P. 11 application filed); *Dowling v. Fawver*, C.A. No. 715, 1987 WL 20190, at *6 (Tenn. Ct. App. Nov. 25, 1987) (No Tenn. R. App. P. 11 application filed).

The trial court's April 21, 1997 order granting Ms. Young custody of the parties' daughter never became final because both parties filed Tenn. R. Civ. P. 59.04 motions within thirty days after its entry. Thus, the trial court was free to change its mind about its initial custody decision based on the proof received during the original divorce trial and the proof adduced at the hearing on the parties' Tenn. R. Civ. P. motion. Because the April 21, 1997 order was not final, it did not preclude the court from considering the custody issue without first finding that there had been a material change in circumstances between the original divorce hearing and the hearing on the parties' Tenn. R. Civ. P. 59.04 motions. Accordingly, we will review the trial court's custody decision as an initial custody order.

### III.

We turn now to the question of custody. Ms. Young asserts that she is comparatively more fit than Mr. Young to have custody of the parties' daughter. Although we place different weight on the various custody-influencing factors in this case than did the trial court, we find that the evidence supports the trial court's decision to award custody to Mr. Young.

## A.

There are no hard and fast rules for determining which custody and visitation arrangement will best serve a child's needs. *See Taylor v. Taylor,* 849 S.W.2d 319, 327 (Tenn. 1993); *Dantzler v. Dantzler,* 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983). This determination is factually driven and requires the courts to carefully weigh numerous considerations. *See Nichols v. Nichols,* 792 S.W.2d 713, 716 (Tenn. 1990); *Rogero v. Pitt,* 759 S.W.2d 109, 112 (Tenn. 1988). Among these considerations are:

> the age, habits, mental and emotional make-up of the child and those parties competing for custody; the education and experience of those seeking to raise the child; their character and propensities as evidenced by their past conduct; the financial and physical circumstances available in the home of each party seeking custody and the special requirements of the child; the availability and extent of third-party support; the associations and influences to which the child is most likely to be exposed in the alternatives afforded, both positive and negative; and where is the greater likelihood of an environment for the child of love, warmth, stability, support, consistency, care and concern, and physical and spiritual nurture.

*Bah v. Bah,* 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983); *see also* Tenn. Code Ann. § 36-6-106 (Supp. 1998).

Parents competing for custody are human beings with their own unique virtues and vices. *See Gaskill v. Gaskill,* 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). Accordingly, the courts do not expect a parent to prove that he or she is perfect, *see Bah v. Bah,* 668 S.W.2d at 666; *Edwards v. Edwards,* 501 S.W.2d 283, 290-91 (Tenn. Ct. App. 1973), or that the other parent is completely unfit. *See Griffin v. Stone,* 834 S.W.2d 300, 305 (Tenn. Ct. App. 1992); *Harris v. Harris,* 832 S.W.2d 352, 353 (Tenn. Ct. App. 1992). Instead, the courts analyze the "comparative fitness" of the parents to determine which of the available custodians is comparatively more fit than the other. *See In re Parsons,* 914 S.W.2d at 893; *Bah v. Bah,* 668 S.W.2d at 666.

Custody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves. Accordingly, trial courts must be able to exercise broad discretion in these matters, as long as their decisions are based on the evidence and on an appropriate application

of the applicable principles of law. *See D v. K*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995). Accordingly, appellate courts are reluctant to second-guess a trial court's decisions, *see Gaskill v. Gaskill*, 936 S.W.2d at 633, and we review these decisions de novo on the record with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. *Nichols v. Nichols*, 792 S.W.2d at 716; *Doles v. Doles*, 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992).

## B.

The evidence concerning the parties' relative suitability to be custodial parents is quite close. The trial court was not required to find that Ms. Young was unfit to be the custodial parent in order to grant custody to Mr. Young. It was required only to find that Mr. Young was comparatively more fit to be the custodial parent. Based on this record, we cannot say that the trial court reached the wrong result.[4] The trial court's decision appears to be driven by its assessment of which of these two parents had demonstrated a stronger commitment to be the custodial parent. While this consideration is factually driven and inherently subjective, we find that it is proper and that it is consistent with the other factors in Tenn. Code Ann. § 36-6-106.

Both parties expressed a sincere desire to have custody of their child. Ms. Young had, without question, been the child's primary care-giver during the marriage. However, we find unconvincing her assertions that Mr. Young had been an absent, detached parent during this time. To the contrary, we find that Mr. Young's involvement with his daughter was perfectly consistent with his job. When it appeared that he would not obtain custody chiefly because of the job he had held during the marriage, he took a lower paying job in order to be better able to discharge the responsibilities of a custodial parent. This conduct provides a basis for concluding that Mr. Young was prepared to place the interests of the parties' child before his own.

---

[4]Our agreement with the trial court's disposition of the custody issue should not be construed as a blanket endorsement of the trial court's reasoning. When the trial court announced its decision, its comments could be construed as indicating that it was faced with choosing between two marginally fit parents ("the lesser of two evils"). Based upon our review of the record, we find no basis for concluding that either of these parties are unfit to have custody of their daughter.

The evidence does not provide any sound basis to conclude that Ms. Young is not also committed to her daughter or that she could not be an attentive parent. It does, however, illustrate three things that do not weigh in Ms. Young's favor. First, she entered into a sexual relationship with another man after the parties separated and before the divorce proceedings concluded. Second, she ignored the trial court's stern admonition and order after the March 1997 hearing not to continue seeing Mr. Edinger. Third, she lied under oath about her continuing involvement with Mr. Edinger. While any of these acts may not have been sufficient in and of themselves to warrant awarding custody to Mr. Young, their cumulative effect provides a sufficient basis for the trial court's conclusion that the custody scales tipped in Mr. Young's favor.

Extramarital sexual conduct may be indicative of parental fitness and thus may be considered in the context of a comparative fitness analysis. *See Barnhill v. Barnhill*, 826 S.W.2d 443, 453 (Tenn. Ct. App. 1991); *Edwards v. Edwards*, 501 S.W.2d at 291. While the courts do not condone extramarital affairs, *see Sutherland v. Sutherland*, 831 S.W.2d 283, 286 (Tenn. Ct. App. 1991), they do not punish parties for their meretricious conduct alone without some proof that the conduct is adversely affecting the children. *See Varley v. Varley*, 934 S.W.2d 659, 666-667 (Tenn. Ct. App. 1996); *Sutherland v. Sutherland*, 831 S.W.2d at 286; *Mimms v. Mimms*, 780 S.W.2d 739, 745 (Tenn. Ct. App. 1989).

Ms. Young admitted that she began having sexual relations with Mr. Edinger in May 1996 and that this conduct continued until they decided that it could affect the outcome of her custody dispute with Mr. Young. There is no evidence that they engaged in this conduct in front of Ms. Young's daughter or that the child had been otherwise adversely affected by that fact that Ms. Young and Mr. Edinger were seen together in public and at family gatherings. Despite the unsupported assertions of Mr. Young's lawyer during argument that simple public dating by a parent while divorce proceedings are pending is per se injurious to children, we find no basis for concluding that Ms. Young rendered herself an unfit mother solely because she began dating before she and Mr. Young were divorced.

More probative of Ms. Young's comparative fitness is her failure to comply with the court's April 21, 1997 order directing her from continuing to have "any contact whatsoever" with Mr. Edinger. Litigants are expected to obey lawful orders of a court, even when these orders are wrong. *See State v. Sammons*, 656 S.W.2d 862, 869 (Tenn. Crim. App. 1982); *Churchwell v. Callens*, 36 Tenn. App. 119, 131-32, 252 S.W.2d 131, 136-37 (1952). They must comply with these orders until they are modified, set aside, or otherwise nullified. *See Vermillion v. Vermillion*, 892 S.W.2d 829, 833 (Tenn. Ct. App. 1994). For reasons known only to her, Ms. Young decided to disregard the trial court's order even while her Tenn. R. Civ. P. 59.04 motion to change it was pending. Her conduct reflects a deficiency in judgment that weighs against her suitability to be the custodial parent.

As if to compound her decision to ignore the trial court's order about seeing Mr. Edinger, Ms. Young then falsely testified at the hearing on her Tenn. R. Civ. P. 59.04 motion that she had faithfully abided by the court's order. Parents lead by example, and accordingly, a parent's veracity is a proper matter to consider in a comparative fitness analysis. *See Gaskill v. Gaskill*, 936 S.W.2d at 634; *Starnes v. Starnes*, No. 01A01-9010-CV-00373, 1991 WL 27360, at *3 (Tenn. Ct. App. Mar. 6, 1991) (No Tenn. R. App. P. 11 application filed); *Witt v. Witt*, No. 83-111-II, slip op. at 17 (Tenn. Ct. App. Aug. 2, 1983) (No Tenn. R. App. P. 11 application filed). Ms. Young's calculated decision to attempt to deceive the trial court about her compliance with its orders weighs against her suitability to be a custodial parent.

We have concluded that Ms. Young's decisions to continue seeing Mr. Edinger and then to lie about it to the trial court tipped the scales in favor of Mr. Young's request for custody. In addition, we must consider another factor – stability and continuity of placement. Stability is an integral part of a child's well-being. *See Taylor v. Taylor*, 849 S.W.2d at 328; *Contreras v. Ward*, 831 S.W.2d 288, 290 (Tenn. Ct. App. 1991). The parties' child has now lived with Mr. Young for more than one year and has become acclimated to that environment. We are reluctant to undermine a child's stability, especially in close cases in which there is no proof that the current custodial arrangement is inconsistent with the child's best interests. This record contains no material evidence that placing the parties' child in Mr. Young's custody has or will harm her.

## IV.

We affirm the judgment awarding Mr. Young custody of the parties' daughter and remand the case to the trial court for any further proceedings that may be required. We tax the costs of this appeal to Janet Ann Young and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
WILLIAM B. CAIN, JUDGE


_____
HENRY F. TODD, JUDGE