# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 10, 2010 Session

## IN THE MATTER OF: SYDNEY T. C. H.

**Direct Appeal from the Juvenile Court for Davidson County**
**No. 9619-27809     Max D. Fagan, Judge**

---

**No. M2009-01230-COA-R3-JV - Filed March 31, 2010**

---

This is an appeal from the Juvenile Court's decision finding Mother guilty of three counts of criminal contempt.  Finding the orders of the Juvenile Court to be lawful, specific and unambiguous, and that the evidence was sufficient to support a finding of willfulness, we affirm.  Also, we find that the permanent injunction entered by the Juvenile Court to be a lawful order of that court.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S. and DAVID R. FARMER, J., joined.

Isabelle Maumus, Nashville, Tennessee, for the appellant, Linda S.C.K.G.

Katherine A. Brown, Nashville, Tennessee, for the appellee, Tyree. B.H. IV.

## OPINION

Mother, Linda S.C.K.G. ("Mother") and Father, Tyree B.H. IV ("Father"), have one child together, born out of wedlock on June 13, 1996.  The parents have an extremely acrimonious relationship and have been in and out of court multiple times since the child's birth and Mother's filing of a petition to establish paternity in 1997.  Mother and Father entered into a settlement agreement on May 22, 1997, wherein Father acknowledged paternity, and Mother's petition was dismissed.  Under their agreement, Father was to pay $12,000 a year in child support.

On February 23, 2001, Mother filed a petition to modify child support wherein she sought to modify Father's child support payments to comply with the Child Support Guidelines.  Mother also requested an upward deviation based on Father's failure to visit

with the child. The Juvenile Court entered an order on January 14, 2002 ("2002 Order"), declaring the parties prior agreement void, declining to award retroactive child support and setting Father's future child support. In the 2002 Order, the Juvenile Court specifically found that Father's lack of visitation had been caused by Mother's actions, and therefore declined to order an upward deviation of child support. Also, in the 2002 Order, the Juvenile Court enjoined Mother from "coming about [Father] at his home, place of employment or otherwise, and that she be prohibited from contacting [Father] for the purpose of harassing, embarrassing, intimidating or threatening [Father], or for any other purpose except through counsel."

Mother appealed from the Juvenile Court's 2002 Order. *See Gorrell v. Harris*, No. M2003-00629-COA-R3-JV, 2004 WL 2345663 (Tenn. Ct. App. October 15, 2004). It does not appear that Mother raised any issue in her appeal as to the provisions contained in the 2002 Order restraining her from contacting Father. This Court affirmed the Juvenile Court's finding that the parties' settlement agreement was void, modified the prospective child support, reversed the Juvenile Court's decision on retroactive child support, affirmed the denial of an upward deviation, and remanded the case to the Juvenile Court for further proceedings. On remand, the Juvenile Court entered a new order on January 23, 2007 ("2007 Order"). In the 2007 Order, the Juvenile Court awarded Father the right to take the child as a deduction on his taxes every year, from and after 1996. The 2007 Order also enjoined Mother "from coming about [Father] at his home, place of employment or otherwise, and from contacting him for the purpose of harassing, embarrassing, intimidating or threatening him."

The appeal presently before this Court stems from the Juvenile Court's decision finding Mother guilty of three counts of criminal contempt. Father filed a Petition for Criminal Contempt on October 27, 2006, alleging that in violation of the 2002 Order, Mother called Father at his place of employment on September 12, 2006, and October 24, 2006. Mother answered on November 6, 2006 by filing a Counter-Petition to Dissolve Injunction and Set Parenting Time. In this sworn petition, Mother admitted contacting Father at his office. The petitions were set for hearing on April 27, 2007. By order entered April 27, 2007, Father's petition for contempt was continued indefinitely. Mother does not dispute that her counsel at that time consented to the continuance. Father then filed a motion on October 28, 2008, requesting permission to amend his petition for contempt and asking the court to set the petition for hearing. In his amended petition, Father incorporated by reference his original petition and added an allegation that Mother violated the 2007 Order by taking the child as a deduction on her 2007 taxes. The Juvenile Court granted permission to amend on December 18, 2008, and set the petition for hearing on February 27, 2009.

Following hearings on February 27, 2009, and May 21, 2009, the Juvenile Court

found Mother guilty of three counts of criminal contempt. At this hearing, Mother struck her Counter-Petition and Petition to Set Parenting Time. The Juvenile Court found that Mother willfully disobeyed both the 2002 Order and the 2007 Order. Specifically, the Juvenile Court found that Mother telephoned Father on September 12, 2006, and October 24, 2006, in violation of the 2002 Order, and that she took the child as a deduction on her 2007 income tax return, in violation of the 2007 Order. The Juvenile Court sentenced Mother to ten days incarceration for each of the three contemptuous acts, but suspended all but two of the days. The Juvenile Court ordered that she was to begin serving her sentence on June 26, 2009. An order reflecting these decisions was entered. Also in this order, the Juvenile Court permanently enjoined Mother from "coming about [Father], and/or any member of his family at their residence, place of employment, or otherwise for any reason whatsoever and from contacting or causing to be contacted [Father], or any member of his family for any reason whatsoever, except in writing through his counsel of record...."

On May 22, 2009, Mother filed a Motion for Stay, requesting that the Juvenile Court stay its sentence pending her appeal. On May 26, 2009, Father filed a motion to alter or amend requesting that the Juvenile Court expand the injunction. On May, 29, 2009, Mother filed a motion to alter or amend the final judgment. The Juvenile Court denied Mother's motions on June 5, 2009. On June 12, 2009, finding that no opposition had been filed, the Juvenile Court granted Father's motion and expanded the injunction to include his coworkers. Mother filed her notice of appeal on June 19, 2009. This Court stayed Mother's sentence pending appeal.

On appeal Mother raises the following issues for our review, as we restate them:

1.      Whether Mother was denied her right to a speedy trial?

2.      Whether the 2002 Order was a lawful order of the Juvenile Court?

3.      Whether the 2002 Order is specific and unambiguous?

4.      Whether the 2007 Order granting Father the right to claim the child on his tax returns is specific and unambiguous?

5.      Whether the evidence was sufficient to find Mother's claiming of the child on her 2007 taxes as willful?

6.      Whether the 2009 permanent injunction is a lawful order of the Juvenile Court?

We review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We review the trial court's conclusions of law *de novo* with no presumption of correctness. ***Barge v. Sadler***, 70 S.W.3d 683, 686 (Tenn. 2002). "If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." ***Heffington v. Heffington,*** No. M2009-00434-COA-R3-CV, 2010 WL 623629 (Tenn. Ct. App. Feb. 19, 2010)(citing ***Jones v. Garrett***, 92 S.W.3d 835, 838 (Tenn. 2002).

As stated by our Supreme Court:

> [C]riminal contempts are 'intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society.' *Black [v. Blount]*, 938 S.W.2d [394], 398 (Tenn. 1996). Punishment for criminal contempt is both punitive and unconditional in nature and serves to adjudicate 'an issue between the public and the accused.' *Id.*

***Doe v. Board of Professional Responsibility of the Supreme Court of Tennessee***, 104 S.W.3d 465, 474 (Tenn. 2003). When the contempt proceeding is criminal in nature, the person sought to be held in contempt is entitled to all of the constitutional protections afforded to a criminal defendant. ***Storey v. Storey***, 835 S.W.2d 593, 599 (Tenn. Ct. App. 1992).

Mother asserts that she was denied her right to a speedy trial. Father originally filed his petition for contempt in October 2006. The hearing was continued indefinitely in April 2007. Mother does not dispute that her attorney consented to this continuance. Following subsequent alleged violations, Father amended his 2006 petition in December 2008, and incorporated the allegations contained in his 2006 petition. A hearing was held on Father's petition in February and May 2009, approximately two and a half years after the filing of the 2006 petition, and two months after the filing of the amended petition. Mother first raised the speedy trial issue at the February 27, 2009 hearing. It does not appear from the record that Mother objected to the almost three month continuance between the two days of hearings on the contempt petition.

The right to a speedy trial is guaranteed by both the United States Constitution, ***Barker v. Wingo***, 407 U.S. 514, 515 (1972), and the Tennessee Constitution. ***State v. Bishop***, 493 S.W.2d 81, 83 (Tenn. 1973). In determining whether a defendant's right to a speedy trial has been violated, the trial court must utilize a balancing test, considering: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his

or her right, and (4) the prejudice to the defendant. **Barker**, 407 U.S. at 530; **Bishop**, 493 S.W.2d at 84 (applying the factors provided by the United States Supreme Court to the Tennessee State Constitution). The length of the delay is a triggering mechanism. **Barker**, 407 U.S. at 530. Until there is a delay of a length to trigger a speedy trial inquiry, there is no need to examine the other factors. **Id.** The determination of whether a delay is lengthy enough to trigger inquiry requires a case by case examination, and the triggering length will differ depending on the particular circumstances and nature of the crime. **Id.** Once inquiry is triggered, the trial court should then consider the remaining factors. **Id.** at 531. As to the reason for delay, a deliberate attempt to delay the trial should be weighed heavily in favor of the defendant, while a more neutral reason should be weighed less heavily. **Id.** "The defendant's assertion of his speedy trial right. . .is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." **Id.** However, failure to assert this right is not a waiver. **Bishop,** 493 S.W.2d at 84. The final factor is prejudice to the defendant. **Barker**, 407 U.S. at 531. In considering this factor, the trial court should consider "the interests of the defendant which the right of a speedy trial is designed to protect . . . (1) to prevent undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation, and (3) to limit the possibilities that long delay impairs the ability of the accused to defend himself." **Bishop**, 493 S.W.2d at 85; *see also* **Barker,** 407 U.S. at 532. In determining prejudice, the last factor, impairing the ability of the defendant to defend himself, is the most serious. **Barker**, 407 U.S. at 532.

After reviewing the record and assuming *arguendo* that Mother did not waive her right to a speedy trial when her attorney consented to a continuance, we find that Mother's right to a speedy trial was not violated. It is questionable whether the length of the delay was such as to trigger a speedy trial inquiry. However, assuming that the inquiry was triggered, after considering the remaining factors, we do not find that Mother's right to a speedy trial was violated. While the delay was deliberate in that Father requested the continuance, there is no evidence that the matter was continued in an effort to "hamper the defense." **Barker,** 407 U.S. at 531. Also, Mother did not assert her right to a speedy trial until the day the trial began. Moreover, Mother did not object and again assert her right when the remainder of the trial was then continued for approximately three months. While Mother's failure to assert her right to a speedy trial does not amount to a waiver, it does make it difficult for her to prove she was denied a speedy trial. **Id.** Further, there is no evidence of any prejudice to Mother caused by the delay. Mother's only allegation of prejudice is that based on the finding of contempt she is forced to be incarcerated years after the filing of the petition. We are unable to determine any prejudice that arises from a delay of incarceration. Mother was not incarcerated prior to the trial. There is no proof in the record nor allegations of anxiety or public embarrassment caused by the delay in the trial. Most importantly, there

is no proof in the record of any impact the delay had on Mother's ability to defend herself. Mother admitted in her sworn counter-petition filed November 6, 2006, less than one month after Father's original petition was filed, that she contacted Father, the violation of the 2002 Order alleged by Father . Also, Mother admitted at trial that she claimed the child on her 2007 taxes. Consequently, we do not find that Mother suffered any prejudice due to the delay. Having found that the delay was not a deliberate attempt to harm Mother's defense, that Mother did not assert her right until the day of the trial, and that Mother did not suffer any prejudice, we do not find that Mother's right to a speedy trial was violated.

We will next address Mother's claim that the 2002 Order was not a lawful order of the Juvenile Court. As our Supreme Court explained:

> The threshold issue in any contempt proceeding is whether the order alleged to have been violated is "lawful." A lawful order is one issued by a court with jurisdiction over both the subject matter of the case and the parties. *Vanvabry v. Staton*, 88 Tenn. 334, 351-52, 12 S.W. 786, 791 (1890); *Churchwell v. Callens*, 36 Tenn. App. 119, 131, 252 S.W.2d 131, 136-37 (1952). An order is not rendered void or unlawful simply because it is erroneous or subject to reversal on appeal. *Vanvabry v. Staton*, 88 Tenn. at 351, 12 S.W. at 791; *Churchwell v. Callens*, 36 Tenn. App. at 131, 252 S.W.2d at 137. Erroneous orders must be followed until they are reversed. *Blair v. Nelson*, 67 Tenn. (8 Baxt.) 1, 5 (1874). However, an order entered without either subject matter jurisdiction or jurisdiction over the parties is void and cannot provide the basis for a finding of contempt. *Brown v. Brown*, 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955); *Howell v. Thompson*, 130 Tenn. 311, 323-24, 170 S.W. 253, 256 (1914). Naturally, the determination of whether a particular order is lawful is a question of law.

*Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 355 (Tenn. 2008)(footnotes omitted). Mother contends that the Juvenile Court lacked subject matter jurisdiction to issue orders that did not "concern[] the support and education of the child." [1]

---

[1]Mother previously raised this issue in her motion to alter or amend filed after the 2002 Order was entered. However, Mother did not raise this issue when she appealed previously to this Court when the Juvenile Court denied her motion to alter or amend the 2002 Order. We now consider it only because subject
(continued...)

We find no merit to Mother's argument. Mother filed this action, a petition for paternity, in 1997. Until 2003, the Juvenile Court had exclusive jurisdiction over paternity cases involving children born out of wedlock,[2] providing the Juvenile Court with exclusive subject matter jurisdiction over this case. Further, in 1997 and 2002, when the disputed order was rendered, paternity actions were brought pursuant to Tennessee Code Annotated § 36-2-301 *et seq*. Accordingly, these are the statutes that governed Mother's action. The paternity statutes provided that when issuing an order on parentage, the trial court had the authority to include in its order of parentage, an order of protection and "any provision deemed to be in the best interests of the child." Tenn. Code. Ann. § 36-2-311(b)(1997). Consequently, the Juvenile Court had the exclusive jurisdiction to issue all orders that it deemed to be in the best interests of the minor child. This is exactly what the Juvenile Court did in the case before us. In its 2002 Order the Juvenile Court specifically stated that "[t]he parties have had a contentious relationship for years". The trial court further found that Father had not exercised his visitation because of the actions of Mother, including threatening, harassing, and intimidating him. Further, the trial court reiterated this concern at the hearing on Mother's contempt charges by stating that Father's lack of relationship with the child is "directly related to [Mother's] threats to accuse him of abuse, of sexual assault or things of that sort unless he abided by [her] demands and [her] constrictions." The Juvenile Court further stated that any resulting harm caused to the child as a result was due to the fault of Mother as much as, if not more than, the fault of Father. The Juvenile Court had subject matter jurisdiction over this paternity action and therefore had the authority to issue orders

---

[1](...continued)
matter jurisdiction may not be waived by the action or inaction of a party. ***Meighan v. U.S. Sprint Commc'ns Co.,*** 924 S.W.2d 632, 639 (Tenn. 1996).

[2]Tenn. Code. Ann. § 37-1-103 (1997) provided:

> (a) The juvenile court has exclusive original jurisdiction of the following proceedings, which are governed by this part:
>
> .                    .                    .
>
> (2) All cases to establish paternity of children born out of wedlock; to provide for the support and education of such children, and to enforce its orders;

In 2003, the statutes were amended so that instead of exclusive jurisdiction, the juvenile court would have concurrent jurisdiction with the circuit and chancery courts over "proceedings to establish paternity of children born out of wedlock and to determine any custody, visitation, support, education or other issues regarding the care and control of the children born out of wedlock." Tenn. Code Ann. § 37-1-104(f)(2003); *see also* Tenn. Code. Ann. § 37-1-103.

containing provisions that it determined to be in the best interests of the child. Accordingly, we find that the 2002 Order was a lawful order of the Juvenile Court.

Mother next contends that neither the 2002 Order nor the 2007 Order were specific and unambiguous. Before a court may hold a person in contempt, the order alleged to have been violated must be specific and unambiguous. *Konvalinka*, 249 S.W.3d at 355 (citations omitted). The order must "expressly and precisely spell[] out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden." *Id.* (citations omitted). For an order to meet this requirement, there must be no reasonable basis for doubt as to the meaning of the order. *Id.* The question of whether an order is sufficiently clear and unambiguous is a question of law. *Id.*

We have reviewed the record and find that both the 2002 Order and the 2007 Order are specific and unambiguous. The 2002 Order provides:

> Therefore, the court finds it appropriate that the [Mother] be restrained and enjoined from coming about the [Father] at his home, place of employment or otherwise, and that she be prohibited from contacting the [Father] for the purpose of harassing, embarrassing, intimidating or threatening the [Father], or for any other purpose except through counsel.
>
>     *       *       *
>
> The [Mother] is restrained and enjoined from coming about the [Father] at his home, place of employment or otherwise, and is prohibited from contacting the [Father], for any purpose whatsoever, except through counsel.

The 2007 Order provides:

> It is further ORDERED, ADJUDGED AND DECREED that the [Father] is hereby awarded the right to claim the minor child . . ., as his dependent on his tax returns every year, from and after 1996.

These provisions expressly and precisely spell out the restrictions placed on Mother. Under the 2002 Order, Mother may not, for any purpose, contact Father. Mother submits that this is not specific and unambiguous because it does not take into consideration that she will not always be represented by counsel. However, while Mother's assertion may be correct, it does

not cause the restrictions to lack specificity or become ambiguous. If Mother believed her lack of counsel would impede necessary communication with Father, it is her duty to petition the court to amend the order. Her possible lack of counsel in the future does affect the specificity of the order. Moreover, even without counsel, Mother could still communicate with Father if necessary through his counsel. As to the 2007 Order, Mother submits that it only provides the right to take the deduction and does not mandate any action or inaction on her part. We disagree. By expressly and precisely ordering that Father have the right to claim the child as a tax deduction for every year since her birth, the trial court is expressly and precisely ordering Mother not to claim the child as a deduction. There is no reasonable basis to doubt the meaning of either the 2002 Order or the 2007 Order. Accordingly, we find that the 2002 Order and the 2007 Order are specific and unambiguous.

Mother's next contention is that the evidence is insufficient to support a finding that her act of claiming the child as a deduction on her 2007 income tax return was willful. To find criminal contempt, the trial court must find that the defendant willfully violated the court's order. Tenn Code Ann. § 29-9-102(3)(2009). "Guilt in criminal contempt cases, including the willful nature of the act, must be proved beyond a reasonable doubt." *Brooks v. Brooks,* No. M2007- 00351-COA-R3-CV, 2009 WL 928283, at * 8 (Tenn. Ct. App. April 6, 2009)(citations omitted). Once the trial court finds the defendant guilty of criminal contempt, the defendant loses his or her presumption of innocence. *Id.* " 'Appellate courts do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt.'" *Moody v. Hutchison,* 159 S.W.3d 15, 25 (Tenn. Ct. App. 2004)(citations omitted); see also Tenn. R. App. P. 13(e). " 'Willful' means that the violation of the court's order "was committed intentionally, with knowledge that the act was in violation of the courts order, as distinguished from an accidental, inadvertent or negligent violation of an order.'" *O'Rourke v. O'Rouke*, No. M2007-02485-COA-R3-CV, 2009 WL 1579244, at *7 (Tenn. Ct. App. June 5, 2009)(J. Kirby dissenting)(citations omitted). In other words, it must be shown that the defendant intentionally and deliberately disobeyed the [court] order. *Foster v. Foster,* No. M2006-01277-COA-R3-CV, 2007 WL 4530813, at *5 (Tenn. Ct. App. December 20, 2007).

We have reviewed the record and find that the evidence is sufficient to support the Juvenile Court's finding of willfulness. Mother admitted claiming the child as a deduction on her 2007 taxes. In an effort to defend herself, Mother claimed that she did not understand the trial court when it issued the 2007 Order, and that her attorney told her he would explain it, but he never did. However, as noted, the 2007 Order was unambiguous and clearly stated which parent had the right to claim the child as a deduction. Mother admits being at all court hearings and hearing all rulings made by the court. The appellate record contains sufficient evidence to conclude that Mother knew the contents of the Juvenile Court order, and

intentionally claimed the child as a deduction, thereby disobeying the Juvenile Court's order. Further, it appears clear based on his finding of willfulness that the Juvenile Court did not believe Mother. The record does not contain clear and convincing evidence to the contrary to allow this Court to reevaluate the Juvenile Court's credibility determinations.

Mother's final contention on appeal is that the permanent injunction entered by the trial court in 2009 is unlawful. The Juvenile Court's June 5, 2009 Order provides:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Respondent, [Mother], should be and is hereby permanently enjoined from coming about the Petitioner, [Father], and/or any member of his family at their residence, place of employment, or otherwise for any reason whatsoever and from contacting or causing to be contacted the said Petitioner, [Father], or any member of his family for any reason whatsoever, except in writing through his counsel of record, Mary Arline Evans.

In granting Father's motion to alter or amend the Juvenile Court expanded the injunction to include:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Mother] should be and is hereby RESTRAINED and ENJOINED from contacting [Father's] coworkers, including specifically his law partners and staff, except in writing through counsel of record, Mary Arline Evans.

Pursuant to Tennessee Code Annotated § 37-1-104(f)(2007), the Juvenile Court has the authority to enter orders in paternity actions "to determine any custody, visitation, support, education or other issues regarding the care and control of children born out of wedlock." Unfortunately, some parents in the situation of Mother and Father, are not able to put the child's interest first, and instead focus on their own interest in retaliating against or punishing the other parent for alleged wrongs. As we previously discussed, the animosity between Mother and Father has resulted in numerous court appearances and filings by both parties and caused Father to have almost no relationship with the child. The Juvenile Court found in 2002, 2007, and 2009, that Mother's actions to harass, threaten and intimidate Father had caused Father not to have any relationship whatsoever with the child. We do not find that the evidence preponderates against the Juvenile Court's findings. The order is specific and unambiguous, clearly stating what activities are required or forbidden by

Mother. Therefore the Juvenile Court lawfully entered an injunction to protect the best interests of the child.

Father requests on appeal that this Court award him costs and attorney fees for this appeal in accordance with Tennessee Code Annotated § 27-1-122, asserting that this is a frivolous appeal. The decision to award damages based on the filing of a frivolous appeal rests solely in the discretion of this Court. *Whalum v. Marshall*, 224 S.W.3d 169, 180 (Tenn. Ct. App. 2006). An appeal is frivolous when it has "no reasonable chance of success," *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999), or is "so utterly devoid of merit as to justify the imposition of a penalty." *Combustion Eng'g, Inc. v. Kennedy,* 562 S.W.3d 202, 205 (Tenn. 1978). Finding that Mother's appeal is utterly devoid of merit, we award attorney's fees and costs to Father and remand to the trial court to determine the amount of the fee award.

For the foregoing reasons, we affirm the decision of the Juvenile Court and remand for a determination of attorneys fees and costs. Cost of this appeal are taxed to Appellant, Linda S.C.K.G., and her surety.

_____

J. STEVEN STAFFORD, J.