# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 8, 2013 Session

# IN RE: LILLIAN F. W.

**Appeal from the Circuit Court for Warren County**
**No. 4147      Ben H. Cantrell, Sr. Judge**

---

**No. M2012-01450-COA-R3-CV - Filed September 30, 2013**

---

This is an appeal from orders entered by the Circuit Court in an appeal from a juvenile court's judgment finding a child dependent and neglected and establishing custody and visitation. These proceedings are part of a custody struggle between the biological father of the child, who lives in California, and her maternal grandparents, who live in Tennessee. Both parties have participated in proceedings in the courts of Tennessee and California. Although the substantive orders of the two courts were very similar, each of the parties decided at some point not to follow the orders of the court in the state of the other party's residence, resulting in conflicting orders of custody and a jurisdictional battle in which both parties have invoked the Uniform Child Custody Jurisdiction Enforcement Act. We have determined that the only type of subject matter jurisdiction at issue here is the temporary, emergency jurisdiction that the juvenile court exercised to determine Grandparents' petition for dependency and neglect.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in Part and Affirmed in Part**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Cindy H. Morgan, Sparta, Tennessee, Connie Reguli, Brentwood, Tennessee, for the appellant, Tony N.

Luke Austin Evans, Heather Graves Parker, Murfreesboro, Tennessee for the appellees, Sam W. and Melinda W.

# OPINION

## I. A PETITION IN CALIFORNIA

The child at the center of this case, Lillian F.W., was born in Warren County Tennessee on May 29, 2008, to Graelynn W. ("Mother"). Tony N. ("Father") was residing in California at the time of the child's birth, and he continues to live there.

Mother filed a petition in the California court on January 13, 2009, to establish parentage and for child support. The petition and summons indicated that Mother and Father were both residents of California and that the action was brought in that court because the child "resides or is found in the county." Mother signed at the bottom of the document "under penalty of perjury."

There was a hearing in the California court almost exactly a year later. Both Mother and Father appeared at the hearing on January 14, 2010. The parties had appeared before that court on August 17, 2009, where they signed " in the court" a Stipulation and Order, which apparently dealt with a partial child custody investigation.

The court's "Minute Order" from the January 14, 2010, hearing (again taking place one year after the filing of Mother's petition), indicates that the parties stipulated in the hearing that a child custody investigation had taken place, and the report was submitted into evidence. They also stipulated that Father was the father of Lillian and that Father would have specified monitored visitations in Tennessee. The court continued the matter for a followup or review hearing, but we can find no order from a hearing on the date scheduled.

The January 14, 2010, hearing resulted in a judgment filed April 22, 2010. The court's order established Father's paternity and adopted the parties' stipulation as to visitation, but added some details and also allowed Father the opportunity for increased and unmonitored visitation in Tennessee, progressing to overnight visitation. The court ordered the parents to set up webcams and allowed visitation through those devices. The court awarded Mother sole physical custody and also sole temporary legal custody, "without prejudice to Father's rights," until a review hearing.

The April 2010 order indicated that Mother was experiencing some legal problems in Tennessee, where she was living at the time. The order stated, "Mother will continue to reside with her parents until her current DUI charge is resolved in court. Should mother be found guilty, then she and the minor child will continue to live with the child's maternal grandparents until she has completed her sentencing and probation."

## II. MOTHER'S DEATH AND RECOURSE TO TENNESSEE COURT

On May 5, 2010, Mother died unexpectedly in Tennessee. A few days later, on May 11, 2010, Father filed a Petition for Child Custody in the Juvenile Court of Warren County, Tennessee. He named as respondents Mother's parents Sam and Melinda W. ("Grandparents") who had been taking care of the child both before and after Mother's death. There was no action taken on Father's Tennessee petition for over a year.

Later, Father would assert that his petition was filed seeking the Tennessee court to exercise its emergency jurisdiction only.[1] Meanwhile, custody proceedings continued in the California court.

## III. FURTHER CALIFORNIA PROCEEDINGS

Father filed a notification in the California court on May 13, 2010, that he would appear in that court to seek an order for custody of the child and to remove her from Tennessee to California. On June 11, 2010, Grandparents went to California and filed a petition for joinder in the California proceedings. They stated that except for very limited periods, the child had resided with them for her entire life, that they had provided for all her physical, emotional and financial needs, and that the child had experienced very limited contact with Father. They also asserted that it would be in the child's best interest for them to be granted custody and that it would be detrimental for her to be placed in Father's custody. The California court granted the motion for joinder.

The parties thereafter stipulated that David Mann, Ph.D., a California psychologist, would be appointed "to evaluate custody and visitation." The parties were ordered to contact Dr. Mann and cooperate with him. A checked box on a standard form attached to a subsequent order setting out the schedule for Dr. Mann's evaluations indicates that the California court found California to be the child's home state. Grandparents subsequently took the child to California several times for two to three days at a time to allow Dr. Mann to conduct his evaluations. Dr. Mann filed a report in the California court, which adopted his recommendations in an order dated May 19, 2011.

In accordance with Dr. Mann's recommendations, the court determined that the child should remain in Grandparents' custody, but that after the completion of parenting classes and individual counseling, Father would be allowed to exercise visitation in California as well as in Tennessee. The court also allowed the frequent webcam visits between Father and

---

[1]He would also later assert that the parties agreed to dismiss this action, but that Grandparents changed their minds.

child to continue. A hearing the following month resulted in an order dated July 20, 2011, that reiterated the same provisions, but called for specific visitation to begin between Father and child in California starting that same month.

In August of 2011, Father appeared in the California court and asserted that Grandparents had not sent the child to California for the ordered visitation. Grandparents were not present in court at that time. The court then declared that Grandparents were not in compliance with its visitation order, and it granted Father sole legal and physical custody of the child. Grandparents were ordered to deliver the child to the Nashville airport on September 11, 2011. The court also declared that "California has continuing exclusive jurisdiction over the custody of the minor child, Lilly, and refuses to relinquish child custody jurisdiction to the state of Tennessee." The court also issued a bench warrant for the arrest of the maternal grandmother.

## IV. SUBSEQUENT PROCEEDINGS IN TENNESSEE

The actions of the California court prompted Grandparents to turn to Tennessee courts. On August 15, 2011, they filed an emergency motion in the Juvenile Court of Warren County to determine whether Tennessee or California had jurisdiction over custody of the child. On August 26, 2011, Father filed his own emergency motion in the same court to determine jurisdiction. On September 28, 2011, Grandparents filed an answer to Father's Tennessee petition for custody, adding a counter-petition for dependency and neglect and for emergency custody.

The Juvenile Court entered an order stating that the question of whether Tennessee had jurisdiction was reserved, "but the court will assume emergency jurisdiction only at this time and . . . [it] will be decided at a later date if Tennessee or California has jurisdiction." On December 7, 2011, the court conducted an adjudicatory hearing on Grandparents' dependency and neglect petition, which included testimony by Jay Woodman, Ph.D., a psychologist retained by Grandparents to evaluate the child.

The court filed its adjudicatory order on January 18, 2012. Relying in part on the expert testimony of Dr. Woodman as well as the expert opinion stated by Dr. Mann in his written report, the court declared that it found the child to be in immediate danger of suffering severe psychological harm if her relationship with Grandparents were to be immediately severed and, thus, that she was dependent and neglected within the definitions found at Tenn. Code Ann. § 37-1-102(b)(1) and (12)(G).

The court found that the child did not have a bond with Father and that all the parties had contributed to that potential harm in some way because none of them had done anything to foster a relationship between the child and the other party. The court also ordered the parties to stop making derogatory comments about one another, stating "[s]uch animosity needs to stop."

The dispositional hearing was conducted by the Juvenile Court on January 25, 2012. In the order resulting from that hearing, filed on March 19, 2012, the court ruled that it was in the best interest of the child for Grandparents to retain temporary custody of her. Father was awarded visitation "in an attempt to reunify this child with her father." The court ordered that Father was to receive two weekend visits with the child per month in Tennessee, to be followed after two months with visitation in California.

On February 10, 2012, Father appealed the Juvenile Court's dependency and neglect adjudicatory order to the Warren County Circuit Court. He also filed a motion to stay the dispositional order and an emergency motion to determine jurisdiction, in which he contended that California had exclusive continuing jurisdiction over the question of custody. For their part, Grandparents moved the Circuit Court to suspend Father's visitation in California. The later-filed dispositional order from the Juvenile Court became part of the appeal.

The Circuit Court conducted a hearing on April 30, 2012. The court heard extensive argument on the question of jurisdiction, at the conclusion of which it denied Father's motion to dismiss the case for lack of jurisdiction, declaring that Tennessee was and always had been the home state of the child, "notwithstanding the petition filed in California by the child's Mother, Graelyn W., before Mother died." An order reflecting this ruling was later entered. The court also denied Grandparents' motion to stay California visitation as well as Father's motion to stay the Juvenile Court's dispositional order.

Thus, under the terms of the Circuit Court's *pendente lite* order, effectively keeping the Juvenile Court's dispositional order in effect, physical custody of the child remained with Grandparents, and Father remained entitled to exercise visitation in both Tennessee and California. The trial court warned Father of his obligation to return the child to Tennessee after visitation in California.

In compliance with the Tennessee court's order, Grandparents allowed Father to take the child to California for visitation. At the end of his scheduled visit, Father refused to return the child to Tennessee. Grandparents then filed an emergency motion in the Circuit Court to suspend Father's visitation and for contempt, which was heard on June 8, 2012. Father did not appear for the hearing on the motion.

The court found Father to be in civil contempt for violating the court's orders and stated that Father was causing substantial emotional and psychological harm to the child by abruptly removing her from the only significant parental bonds she has known. Grandparents were granted a judgment for the attorney fees in the amount of $3,300 expended in their motions to suspend visitation and for civil contempt. A show cause order was also issued for Father to appear on June 28, 2012, to show why he should not be held in criminal contempt as well.

Father did not appear at the hearing of June 28. His attorney explained that at the behest of Grandparents, he had been arrested in California under a warrant for custodial interference and was in jail. At the conclusion of the hearing, the court suspended Father's visitation, found him in criminal contempt of court,[2] and ordered his arrest. This appeal followed.

## IV. NATURE OF PROCEEDINGS BELOW

In this appeal, the parties primarily argue about which state has jurisdiction to decide custody of Lillian, each emphasizing different sections of the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA), with Father asserting that the California court has subject matter jurisdiction, and Grandparents asserting that such jurisdiction lies with Tennessee.[3] However, we have determined that the appeal involves a question of jurisdiction under Tennessee statutes governing the roles of the two courts in this state that have been involved. That question must be defined and examined first because it determines the scope of the issues actually before this court in this appeal.

Subject matter jurisdiction "relates to the nature of the cause of action and the relief sought" and "is generally defined by the constitution or statute and conferred by the authority

_____

[2]Father has not raised any issues regarding the order of criminal contempt. Father's notice of Appeal to this court was filed July 3, 2012, after the hearing on the criminal contempt.

[3]It is worth noting that both parties participated in proceedings in both California and Tennessee. It is also worth noting that up to a certain point in time, the orders from the two courts were not dissimilar. Both courts gave custody to Grandparents with visitation for Father in Tennessee and later in California also. The goal of both courts was to give Father more visitation gradually so that he and the child could form a relationship. The problem arose when each of the parties decided to ignore a custody order. Grandparents were found to have violated the California order, and the California court awarded custody to Father. Later, Father refused to return the child to Tennessee, in violation of the existing Tennessee court order, and the Tennessee court awarded custody to Grandparents. However, subject matter jurisdiction, which relates to a court's power or authority to adjudicate a particular controversy, is "an essential requirement for the granting of judicial relief both at trial and on appeal," and is not subject to waiver. Tenn. R. Civ. P. 12.08; Tenn. R. App. P. 13(b); *State v. Wright*, 736 S.W.2d 84, 85 (Tenn. 1987).

that organizes the courts." *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996). When a court's subject matter jurisdiction is questioned, the court must first ascertain the nature, or gravamen, of the case in order to determine "whether the Tennessee Constitution, the General Assembly, or the common law have conferred on it the power to adjudicate cases of that sort." *Staats v. McKinnon*, 206 S.W.3d 541, 542 (Tenn. Ct. App. 2006) (citations omitted).

Father has appealed to this court "all orders of the Circuit Court." It is necessary, therefore, to start with the procedural posture of the matter before the Circuit Court and its repercussions on the scope of this appeal. The Circuit Court first became involved in this dispute when Father appealed the Juvenile Court's dependency and neglect orders.

## A. Dependency and Neglect

Dependency and neglect actions are created and governed by statute. The legislature has specifically conferred on juvenile courts exclusive original jurisdiction to hear dependency and neglect matters and the authority to make a "proper disposition" if a child is found to be dependent and neglected, *i.e.*, decide custody of the child. Tenn. Code Ann. § 37-1-130; *In re D.Y.H.*, 226 S.W.3d 327, 330 (Tenn. 2007).

In dependency and neglect cases, any appeal from the juvenile court is to be heard by the circuit court.[4] It is not just a finding that a child is dependent and neglected that is appealable to circuit court. "[A]ny custody decision that is made during a dependency and neglect proceeding is a part of the dependency and neglect proceeding and appealable to circuit court." *In re D.Y.H.*, 226 S.W.3d at 331 (citing *Tennessee Dep't of Children's Serv. v. Owens*, 129 S.W.3d 50, 55 (Tenn. 2004)).

While the appeal is pending in the Circuit Court, the dispositional order of the Juvenile Court remains in effect, absent other action by the Circuit Court.[5] Although the record of the juvenile court proceedings is to be provided to the circuit court on appeal, Tenn. Code Ann. § 37-1-159(c), the circuit court is required to "hear the testimony of witnesses and

---

[4]"The juvenile court shall be a court of record; . . . and any appeal from any final order or judgment in . . . [a] dependent and neglect proceeding, filed under this chapter, may be made to the circuit court that shall hear the testimony of witnesses and try the case *de novo*." Tenn. Code Ann. § 37-1-159(a).

[5]An appeal does not suspend the order of the juvenile court, nor does it release the child from the custody of that court or of that person, institution or agency to whose care the child has been committed. Pending the hearing, the criminal court or circuit court may make the same temporary disposition of the child as is vested in juvenile courts; provided, that until the criminal court or circuit court has entered an order for temporary disposition, the order of the juvenile court shall remain in effect. Tenn. Code Ann. § 37-1-159(b).

try the case *de novo*." Tenn. Code Ann. § 37-1-159(a). Not only must the circuit court try the case *de novo*, it must also render an independent decision based on the evidence received in the circuit court proceeding. *Tennessee Dep't. of Children's Serv. v. T.M.B.K.*, 197 S.W.3d 282, 289 (Tenn. Ct. App. 2006); *In re M.J.B.*, 140 S.W.3d 643, 651 (Tenn. Ct. App. 2004); *In re M.E.*, 2004 WL 1838179, at *5 (Tenn. Ct. App., August 16, 2004) (perm. app. denied Nov. 8, 2004).

Because of the unique nature of dependency and neglect proceedings, the legislature has provided for continuing jurisdiction in the juvenile court for such matters until one of several enumerated events occurs. Tenn. Code Ann. § 37-1-103(c)[6]; *In re D.Y.H.*, 226 S.W.3d at 330. Essentially, once jurisdiction is acquired in a dependency and neglect proceeding, the juvenile court's jurisdiction continues over the child until one of the following four events occurs: (1) the petition is dismissed, (2) the case is transferred, (3) an adoption petition is filed, or (4) the child reaches 18. *In re D.H.Y.*, 226 S.W.3d at 330. Of course, this continuing jurisdiction relates to the roles of Tennessee courts, not to the relationship of a Tennessee juvenile court to a court of another state.

Because juvenile courts have exclusive original jurisdiction over dependency and neglect matters, when a juvenile court has asserted jurisdiction, then no other Tennessee court may take any action affecting the child's custody without first obtaining the juvenile court's approval for a transfer. *Tennessee Dep't of Human Serv. v. Gouvitsa*, 735 S.W.2d 452, 455-57 (Tenn. Ct. App. 1987); *In re McCloud*, 1993 WL 194041, at *6 (Tenn. Ct. App. June 19, 1993) (citing *Kidd v. State ex rel Moore*, 338 S.W.2d 621, 624-25 (Tenn. 1960)) (no

---

[6]     When jurisdiction has been acquired under the provisions of this part, such jurisdiction shall continue until the case has been dismissed, or until the custody determination is transferred to another juvenile, circuit, chancery or general sessions court exercising domestic relations jurisdiction, or until a petition for adoption is filed regarding the child in question as set out in § 36-1-116(f). However, the juvenile court shall retain jurisdiction to the extent needed to complete any reviews or permanency hearings for children in foster care as may be mandated by federal or state law. This provision does not establish concurrent jurisdiction for any other court to hear juvenile cases, but merely permits courts exercising domestic relations jurisdiction to make custody determinations in accordance with this part. Notwithstanding any other law to the contrary, transfers under this provision shall be at the sole discretion of the juvenile court and in accordance with § 37-1-112. In all other cases, jurisdiction shall continue until a person reaches the age of eighteen (18), except that the court may extend jurisdiction for the limited purposes set out in § 37-1-102(b)(4)(B) until the person reaches the age of nineteen (19).

Tenn. Code Ann. § 37-1-103(c).

Tenn. R. App. P. 11 application filed); *see In re D.Y.H.*, 226 S.W.3d at 331 (favorably citing *Gouvitsa*). This rule does not apply, of course, to appellate review of a juvenile court's decision.

Accordingly, when the Circuit Court issues its order deciding the dependency and neglect appeal, it **"shall remand the case to the juvenile court for enforcement of the judgment rendered by the criminal court or circuit court."** Tenn. Code Ann. § 37-1-159(b) and (c) (emphasis added).

## B. Emergency Jurisdiction under UCCJEA

The Juvenile Court exercised emergency jurisdiction under the UCCJEA, and the Circuit Court's appeal would also have been undertaken pursuant to that type of jurisdiction. As between the courts of California and those of Tennessee, the only type of jurisdiction at issue would have been emergency jurisdiction.

The UCCJEA, which has been adopted by both California and Tennessee, as well as by all fifty states in some form, *Staats v. McKinnon,* 206 S.W.3d at 545, is designed to, *inter alia*, avoid jurisdictional conflict between courts of different states in matters of child custody. Tenn. Code Ann. § 36-6-202. In fact, the conflict that has been occurring in this case with competing orders being entered in California and in Tennessee is exactly the type of jurisdictional conflict that the UCCJEA was designed to eliminate.

To that end, the UCCJEA, codified at Tennessee Code Annotated §§ 36–6–201 *et seq.*, establishes priorities to be applied in determining which state has jurisdiction over a particular dispute. At the top of this heirarchy is the child's home state, and analysis generally begins with the first state to enter an order regarding custody. However, the hierarchy can be bypassed by the exercise of a different type of jurisdiction: emergency jurisdiction.

In this case, the Tennessee Juvenile Court assumed subject matter jurisdiction over the dependency and neglect petition pursuant to the UCCJEA's provision for the exercise of jurisdiction in emergency situations. Tenn. Code Ann. § 36-6-219(a). That provision states:

> A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

As the provision makes clear, emergency jurisdiction is temporary. The Supreme Court of Tennessee has explained:

> Subsections (b) and (c) of Tennessee Code Annotated section 36–6–219 indicate that the exercise of emergency jurisdiction is a temporary measure that "remains in effect until an order is obtained from a court of a state having jurisdiction under §§ 36–6–216–36–6–218." Tenn. Code Ann. § 36–6–219(b) (2005); *see also* Tenn. Code Ann. § 36–6–219(c) (2005) ("any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under §§ 36–6–216–36–6–218").

*Button v. Waite*, 208 S.W.3d 366, 369 (Tenn. 2006). In that case, the trial court had ordered that its emergency jurisdiction was to continue indefinitely. This court reversed, and the Supreme Court held:

> [T]he Tennessee trial court's indefinite continuation of its exercise of emergency jurisdiction "for all purposes" clearly contravenes Tennessee Code Annotated subsections 36–6–219(b) and (c), which authorize the exercise of emergency jurisdiction on a temporary basis only. Temporary emergency jurisdiction is not intended to provide a state with modification jurisdiction for an indefinite period of time. Thus, the Court of Appeals properly vacated the trial court's order that continued its temporary emergency jurisdiction indefinitely and "for all purposes."

*Id*. at 370.

In the case before us, the Juvenile Court entered an order on November 3, 2011, in which it reserved ruling on the competing emergency motions that had been filed by the parties to determine jurisdiction,[7] specifically stating it was reserving ruling on whether

---

[7]On August 15, the Grandparents, in response to Father's petition for custody, filed a counter petition asking the court to find the child dependent and neglected (if Father were given custody) and an Emergency Motion to Determine Jurisdiction, asking the Juvenile Court to hold an expedited hearing to determine whether the Tennessee juvenile court or the California court "has superior jurisdiction to hear these matters further." On August 26, Father filed his own Emergency Motion to Determine Jurisdiction. In that motion he argued that California had exclusive, continuing jurisdiction under the UCCJEA over Lillian's custody and that California was the more proper forum because it had heard litigation in this case for three years. In that motion, he acknowledged that he had asked the Tennessee court to give him custody after the child's mother died. Father filed an Amended Motion to Determine Jurisdiction to report that a hearing had been

(continued...)

Tennessee has jurisdiction. However, the court stated that it would assume only emergency jurisdiction "at this time" and set a hearing on the dependency and neglect petition.[8]

In the December 7, 2011, continued hearing in Juvenile Court on the dependent and neglect petition, the judge, responding to a question by counsel stated:

> [A]s long as we are operating under the dependency and neglect statute, the court retains jurisdiction. When this dependency and neglect case is over, we're done. I think that's the law. I've got emergency jurisdiction under that statute and I'll retain it until this case is resolved.

Counsel for Father then asserted that under the emergency jurisdiction law, the court can take emergency jurisdiction for immediate temporary orders until such time as the California court can take back that jurisdiction and make sufficient orders.

The Juvenile Court found Lillian to be dependent and neglected. On January 20, 2012, after the adjudicatory order, but before the dispositional hearing, Father filed a motion in the Juvenile Court asking it either to dismiss the case for lack of jurisdiction and declare its adjudication of dependency and neglect void or, in the alternative, to enter an order declaring the court's order of adjudication as final for appeal. In that motion, Father recognized that the Tennessee Juvenile Court had exercised UCCJEA emergency jurisdiction over the dependency and neglect action and argued that any such jurisdiction had ended because the California court had entered an order of custody on September 7, 2011. Father did not raise any other jurisdictional challenges to the Tennessee Juvenile Court's exercise of jurisdiction.

The Juvenile Court's dispositional order was entered on March 19, 2012, from the dispositional hearing that occurred on January 25, 2012. In that order, the Juvenile Court recounted:

---

[7](...continued)
held in the California court on September 7, where all parties were represented by counsel, and that court had granted Father legal and physical custody of the child, with no visitation by Grandparents pending a hearing to be held on October 13. In that September 7 order, the California court stated it had contacted the Tennessee juvenile court judge and that California had jurisdiction for child custody orders in this case, that it had continuing, exclusive jurisdiction, and that the court refused to relinquish jurisdiction to Tennessee.

[8]In the same order, the Juvenile Court ordered Grandparents to have Lillian ready for webcast visits with Father "as previously ordered in the Orange County Superior Court, California."

As to Respondent's Motion to Dismiss for Lack of Jurisdiction or to Declare Final for Appeal, the Court heard arguments and informed Respondent that the Court would make a ruling on the motion, however, it would take the Court some time to consider the issues raised. The Court further stated that said Motion would need to be ruled upon prior to going forward with the dispositional hearing; therefore, said hearing would be continued to a later date. In response, counsel for the Respondent withdrew the motion and insisted on going forward with the dispositional hearing.

Therefore, at the time of the dispositional order, there were no outstanding jurisdictional issues that the Juvenile Court was asked to decide.

## V. ORDERS OF THE CIRCUIT COURT

Father has appealed "all orders of the Circuit Court." We will examine that court's significant rulings in the context of the scope of this appeal and the scope of the matter before the Circuit Court.

### A. The Circuit Court's Order Re Home State Jurisdiction

It is extremely clear that the Juvenile Court considered the dependency and neglect petition under the emergency jurisdiction provision of the UCCJEA. The parties later informed the Circuit Court that the Juvenile Court judge had contacted the California judge, who had agreed that "if there was a dependency and neglect alleging substantial harm that that would kick in the emergency jurisdiction issues and allow them to take emergency jurisdiction and so they deferred to the Tennessee court in order to hear any substantial harm to the child." There is no order confirming this, but the point is that the parties always thought the Juvenile Court was exercising only emergency jurisdiction.

Consequently, that is the only exercise of jurisdiction that was subject to challenge, because the appeal to the Circuit Court was an appeal of the dependency and neglect orders only. The Circuit Court does not have jurisdiction over appeals from juvenile court judgments in custody proceedings brought pursuant to Tenn. Code Ann. § 37-1-104(f). As discussed earlier, any appeal from the juvenile court in dependency and neglect actions is made to the Circuit Court and is heard there *de novo*. Tenn. Code Ann. § 37-1-159(a). However, "Appeals in all other civil matters heard by the Juvenile Court shall be governed by the Rules of Appellate Procedure." Tenn. Code Ann. § 37-1-159(g). Such appeals would

come directly to this court.[9] *See Williams v. Butze*, 2009 WL 723485 (Tenn. Ct. App. March 18, 2009). Consequently, any matters related to orders entered in the custody matter in this case that preceded the dependency and neglect petition would not be appealable to Circuit Court and would not be within that court's jurisdiction under state law. Accordingly, challenges to the jurisdiction of the Juvenile Court to enter custody orders prior to that court's exercise of emergency jurisdiction in the dependency and neglect action were not properly before the Circuit Court.

However, on April 27, 2012, Father filed an Emergency Motion to Determine Jurisdiction with the Circuit Court, asking that court to set an emergency hearing to determine whether Tennessee or California has jurisdiction over the minor child. Although Father acknowledged that he had asked the Tennessee court for custody of the child after Mother's death, he asserted that his request had been made "pursuant to the emergency powers found under the UCCJEA" since the child was in the custody of Grandparents and they would not give the child to him.

Father argued that California had jurisdiction over the custody of the child because: (1) Grandparents had requested to join in the action in California, and in the hearing on their petition, counsel for Grandparents argued that California had jurisdiction, not Tennessee;[10] (2) from June 10, 2010 until June 2011, Grandparents actively participated in litigation in California regarding custody of the minor child and even obtained an Order granting them temporary custody of the minor child; (3) California at all times has asserted continuing jurisdiction pursuant to the UCCJEA and has refused to relinquish said continuing jurisdiction; and (4) Grandparents, after submitting to over a year of litigation in California, were now requesting the Tennessee court to intervene and make rulings adverse to those of California.

---

[9]While a subsequent decision by the juvenile court on whether to modify an initial custody order will also arise from and be a part of the neglect and dependency proceeding and, therefore, appealable to the circuit court, *In re D.Y.H.*, 226 S.W.3d at 331, the custody proceeding herein came before the dependency and neglect petition was filed. Any orders of the juvenile court before the filing of the dependency and neglect action were not subsequent to or part of that action. Such orders reflected decisions that would not have been made "*during* a dependency and neglect proceeding." *Id.* (emphasis added).

[10]The transcript of that hearing shows that the California judge questioned counsel about the matter that had been commenced in Tennessee, wanting to make sure of his jurisdiction, and was assured by Grandparents' counsel that there was no question about the California court's continuing jurisdiction over custody of the child.

-13-

On April 27, 2013, Grandparents filed a response to Father's motion. They argued (1) Tennessee has jurisdiction because it is the child's home state since she has lived in this state since birth; (2) California never had subject matter jurisdiction, and neither Mother nor Grandparents could confer it by their actions; and (3) Father has submitted to the jurisdiction of the Tennessee courts and never challenged Tennessee's jurisdiction at the Juvenile Court level.[11]

Thus, neither Father nor Grandparents asked the Circuit Court to determine its jurisdiction, or that of the Juvenile Court, under the emergency jurisdiction section of the UCCJEA. Neither addressed the emergency jurisdiction exercised by the Juvenile Court and, therefore, the basis of the Circuit Court's jurisdiction in this appeal from a dependency and neglect proceeding. That was, however, the only jurisdiction being exercised and the only type of jurisdiction that could have been challenged in the appeal to Circuit Court.

Nonetheless, the Circuit Court ruled on Father's motion. It held that Tennessee possessed original "home state" jurisdiction and that California never had authority under the UCCJEA to make a custody decision. The court reaffirmed that holding in its final order.

Because the Circuit Court did not have jurisdiction to determine any issues outside of the dependency and neglect appeal, and because the only type of jurisdiction at issue in that action was emergency jurisdiction under the UCCJEA, we must vacate the orders of the Circuit Court regarding interstate jurisdiction, home state determination, and the validity of any orders except the dependency and neglect orders.

## B. The Circuit Court's Order on Dependency and Neglect Adjudication and Disposition

The Circuit Court did not, in fact, conduct a new trial on the dependency and neglect petition. The Circuit Court's order explained:

---

[11]Grandparents make the opposite argument in regard to their participation in the California proceeding for a long time. They assert that only when they changed attorneys did they learn that California did not have jurisdiction and stopped participating in the California proceeding. While they argue that they could not have conferred jurisdiction on the California court by participating in the case there, they also argue that Father's participation in the Tennessee court constitutes his "submission" to this state's jurisdiction. Father similarly excuses his participation in the Tennessee proceedings. Both parties participated in proceedings in the courts that they now claim were without jurisdiction; both stopped when they did not want to comply with court orders; and the same legal principles apply each party's participation.

This matter was originally set today for a *de novo* trial on Father's appeal from the adjudication and disposition of the Juvenile Court for Warren County in the matter of Lillian Frances W. Based on this Court's finding that Mr. N. is currently in continuous contempt of this Court's orders and not entitled to any relief from the Court until he purges himself of said contempt, as well as the fact that Mr. N. was properly noticed to appear before the Court today and prosecute his appeal but failed to do so, this Court hereby affirms the Juvenile Court's finding of Dependence and Neglect against the Father.

In effect, the Circuit Court dismissed Father's appeal for failure to prosecute and due to his contempt. Because there was no *de novo* trial, the Circuit Court did not rule on the merits. The court misspoke when it said it was "affirming" the Juvenile Court's adjudication of dependency and neglect.

A circuit court's trial *de novo* of a case originally initiated in juvenile court, under Tenn. Code Ann. § 37-1-159(a), is analogous to a circuit court trial in an appeal of a case originally initiated in general sessions court, which also requires a *de novo* trial. There is essentially "no difference in the effect of an appeal from general sessions court for a trial *de novo* and the effect of an appeal from juvenile court for a trial *de novo*." *State v. Mays*, 2000 WL 705979, at *2 (Tenn. Ct. App. May 26, 2000) (no Tenn. R. App. P. 11 application filed). The cases analyzing general sessions appeals have consistently found that the matter is tried in Circuit Court as if no other trial had occurred. *Ware v. Meharry Medical College*, 898 S.W.2d 181, 184 (Tenn. 1995).

In a *de novo* trial the Circuit Judge does not review the action of the General Sessions Judge and is not concerned with what took place in the General Sessions Court nor the propriety of the lower Court's action; and no presumption of correctness attaches to the General Sessions judgment. The matter is tried as if no other trial had occurred.

*Cooper v. Williamson Cnty. Bd. of Educ.*, 746 S.W.2d 176, 181 (Tenn. 1987) (quoting *Hohenberg Bros. Co. v. Missouri Pacific Railroad Co.*, 586 S.W.2d 117, 119 (Tenn. Ct. App. 1979)).

The effect of the Circuit Court's ruling was that the Juvenile Court's order remained in effect. That is true not only with regard to the adjudicatory order, but also with regard to the Juvenile Court's disposition of custody of the child it had found to be dependent and neglected.

-15-

Since the Circuit Court did not independently determine whether Lillian was dependent and neglected, but instead dismissed the appeal, it could not review or modify the Juvenile Court's dispositional order. Unless a child is determined to be dependent and neglected, no dispositional order may be made. Tenn. Code Ann. § 37-1-130. Not only must the Circuit Court try the case *de novo,* it must also render an independent decision based on the evidence received in the Circuit Court proceeding. *T.M.B.K.*, 197 S.W.3d at 289; *In re M.J.B.*, 140 S.W.3d at 651; *In re M.E.*, 2004 WL 1838179, at *5.

We vacate the Circuit Court's order determining the custody of Lillian and any visitation schedule for Father.

In this appeal, Father argues that the Circuit Court was compelled to conduct a trial on the dependency and neglect petition, primarily because the relevant statute says the circuit court "shall hear the testimony of witnesses and try the case de novo." Tenn. Code Ann. § 37-1-159(a). That statute merely established the procedure to be used, it does not command the court to try the case when the interested party has not proceeded with it. Father had filed the appeal, but he did not appear on the date scheduled for trial. We find no error in the trial court's dismissing that appeal on the basis of failure to prosecute.

In his brief, Father argues that the trial court's order denying Father a trial in the appeal de novo was not proper and asks for relief, "the decision of the Trial Court should be reversed and the case remanded for further hearing if necessary." We assume that means Father would seek to have the appeal of the dependency and neglect hearing reinstated in the Circuit Court, which is contrary to his position that no Tennessee court has jurisdiction. The proper remand, as we have stated, is to the Juvenile Court, for consideration of matters of jurisdiction and other matters raised by the parties.

## C. The Circuit Court's Order Continuing Its Jurisdiction

Additionally, the Circuit Court's order declaring that it would retain jurisdiction over the custody of Lillian must be vacated. As explained earlier, the Juvenile Court has continuing jurisdiction over the child in a dependency and neglect action until one of the following four events occurs: (1) the petition is dismissed, (2) the case is transferred, (3) adoption petition is filed, or (4) the child reaches 18. Tenn. Code Ann. § 37-1-103(c); *In re D.Y.H.*, 226 S.W.3d at 330. That jurisdiction is continuing and exclusive, and when a juvenile court has asserted jurisdiction, no other Tennessee court may take any action affecting the child's custody without first obtaining the juvenile court's approval for a transfer. *Gouvitsa*, 735 S.W.2d at 455-57.

While this rule does not apply to a Circuit Court appeal, once the Circuit Court enters its order deciding the dependency and neglect appeal, it "shall remand the case to the Juvenile Court for enforcement of the judgment . . . ." Tenn. Code Ann. § 37-1-159(b) and (c). In the case before us, the Circuit Court did not actually independently hear evidence and decide whether Lillian was dependent and neglected, so the remand to the Juvenile Court is for enforcement of its own order. Any requests for modification of the Juvenile Court's order is properly addressed to that court.

Thus, the Circuit Court did not retain any jurisdiction over the custody of the child. Because she had been found dependent and neglected by the Juvenile Court, such jurisdiction returned to and remained with the Juvenile Court. Accordingly, we must vacate the Circuit Court's order holding that it "retains jurisdiction over further orders with respect to Father's visitation" and continuing the suspension of Father's visitation previously ordered by the Circuit Court until Father appears before that court to show cause why visitation should be reinstated. As explained above, the Circuit Court dismissed Father's appeal, jurisdiction over Lillian returned exclusively to the Juvenile Court, and the Circuit Court could not have retained jurisdiction to enforce its orders even if it had ruled on the merits after a trial.[12]

We do not hold, however, that the circuit court is without jurisdiction over contempt actions to enforce its orders that were in effect when the contemptuous failure to obey was committed.

## D. Civil Contempt and Related Holdings

On June 8, 2012, Father failed to appear at the scheduled trial on the dependency and neglect petition. Prior to the hearing, Grandparents had filed a motion to hold Father in civil contempt. The Circuit Court found Father to be in civil contempt for violating that court's order on Father's visitation by not returning the child to Tennessee when his scheduled visitation was over.

---

[12]On April 23, 2012, Father filed with Circuit Court a Notice of Registration of Foreign Decree as well as a Motion to Enforce Foreign Judgment, attaching an order from California that had been filed August 5, 2011, and requesting the Circuit Court to award custody of Lillian to Father. At that time, the only action before the Circuit Court was the *de novo* appeal from the dependency and neglect orders of the Juvenile Court. The Circuit Court denied Father's motion, stating that the court had already conducted a hearing on the issue of jurisdiction between California and Tennessee, the court had found that Tennessee had home state jurisdiction, and that California had no authority to make a custody determination. Because of its finding that California lacked subject matter jurisdiction, the Circuit Court declined to grant a motion to enforce an order from that court. Because this was a dependency and neglect action under the emergency jurisdiction statute, we agree with the trial court that enforcing the custody order from California was inappropriate.

In this appeal, Father's only argument regarding the civil contempt holding is that it should be reversed because the Tennessee court that entered it did not have jurisdiction over the custody of the child. He asserts that the California court has continuing, exclusive jurisdiction.

We have already explained that the Circuit Court, in hearing an appeal *de novo* from the dependency and neglect orders of the Juvenile Court, was exercising temporary emergency jurisdiction under the UCCJEA, as had the Juvenile Court. Consequently, Father's arguments regarding which state had jurisdiction over custody are not relevant. Father has not challenged in this appeal the exercise of emergency jurisdiction.

When a dependency and neglect action is appealed to the Circuit Court, the order of the juvenile court is not suspended. Tenn. Code Ann. § 37-1-159(b). "Pending the hearing, the . . . circuit court may make the same temporary disposition of the child as is vested in juvenile courts." In the case before us, pending the trial *de novo*, the Circuit Court entered an order giving Grandparents custody of Lillian and establishing a visitation schedule for Father that included visitation in Tennessee and in Florida, which had been the substance of the Juvenile Court's dispositional order. Accordingly, the Circuit Court herein acted within its subject matter jurisdiction in establishing *pendente lite* custody and visitation, which is the order Father was found guilty of violating.

> A lawful order is one issued by a court with jurisdiction over both the subject matter of the case and the parties. *Vanvabry v. Staton*,16 88 Tenn. 334, 351–52, 12 S.W. 786, 791 (1890); *Churchwell v. Callens*, 36 Tenn.App. 119, 131, 252 S.W.2d 131, 136–37 (1952). An order is not rendered void or unlawful simply because it is erroneous or subject to reversal on appeal. *Vanvabry v. Staton*, 88 Tenn. at 351, 12 S.W. at 791; *Churchwell v. Callens*, 36 Tenn.App. at 131, 252 S.W.2d at 137. Erroneous orders must be followed until they are reversed. *Blair v. Nelson*, 67 Tenn. (8 Baxt.) 1, 5 (1874). However, an order entered without either subject matter jurisdiction or jurisdiction over the parties is void and cannot provide the basis for a finding of contempt. *Brown v. Brown*, 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955); *Howell v. Thompson*, 130 Tenn. 311, 323–24, 170 S.W. 253, 256 (1914). Naturally, the determination of whether a particular order is lawful is a question of law.

*Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 355 (Tenn. 2008).

In this appeal, Father also challenges the Circuit Court's award of attorney's fees to Grandparents for the civil contempt action. We find no abuse of discretion and affirm that award.

## VI. THE JUVENILE COURT'S EXERCISE OF EMERGENCY JURISDICTION

In their briefs and argument before this court, the parties have not addressed the initial exercise of emergency jurisdiction. Father did challenge the Juvenile Court's continuing exercise of emergency jurisdiction in a motion and argument that were later withdrawn. That challenge was based upon the duration of the Juvenile Court's temporary jurisdiction in an emergency.

As set out earlier, the Tennessee Supreme Court has interpreted the relevant statutory provisions as granting only temporary jurisdiction that "remains in effect until an order is obtained from a court of a state having jurisdiction under §§ 36–6–216–36–6–218." Tenn. Code Ann. § 36–6–219(b);[13] *Button*, 208 S.W.3d at 369. The other relevant provision states:

> If there is a previous child custody determination that is entitled to be enforced under this part, or a child-custody proceeding has been commenced in a court of a state having jurisdiction under §§ 36-6-216--36-6-218, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under §§ 36-6-216--36-6-218. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.[14]

_____

[13]Subsection (b) provides:

If there is no previous child custody determination that is entitled to be enforced under this part and a child custody proceeding has not been commenced in a court of a state having jurisdiction under §§ 36-6-216--36-6-218, a child-custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under §§ 36-6-216--36-6-218. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under §§ 36-6-216--36-6-218, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

[14]Subsection (d) of Tenn. Code Ann. § 36–6–219 provides:

A court of this state which has been asked to make a child-custody determination under this section, upon being informed that a child-custody proceeding has been commenced in, or

(continued...)

Tenn. Code Ann. § 36–6–219(c).

In the Juvenile Court, Father argued that the California court had entered an order giving him custody and, therefore, the temporary emergency jurisdiction exercised by the Juvenile Court had expired pursuant to the statute. However, Father relied upon an order that had been entered by the California court on September 7, 2011, well before the Juvenile Court stated its intention, in November of 2011, to exercise emergency jurisdiction over the dependency and neglect petition.

It is clear that Tenn. Code Ann. § 36–6–219(c) envisions an order by a court of another state **after** the exercise by a Tennessee court of temporary emergency jurisdiction. It provides that the order issued in this state is to last long enough for a party to seek an order from the other state and remains in effect until an order is obtained from the other state within the period specified. Obviously, an order from another state that precedes the Tennessee order arising from its exercise of temporary emergency jurisdiction does not meet the statutory language. Father's challenge based on the September 2011 California order was without merit.

At the June 8, 2012, hearing in Circuit Court, counsel for Grandparents informed the court of matters occurring after the Circuit Court had issued orders regarding Father's visitation. Counsel told the court that Grandparents had appeared again in the California court and asked that the bench warrants against them be removed, and they were. "However, the California court still asserts jurisdiction and then there is a hearing in California scheduled for June 20 regarding custody." Father's counsel stated that Grandparents asserted in the California court that Tennessee was only exercising emergency jurisdiction. She also told the Circuit Court that Father had asked the California court to rule that the need for emergency jurisdiction had ended and that the California court had ruled there was no need for any further emergency jurisdiction. However, no such order from the California court appears in the record before us.

---

[14](...continued)
a child-custody determination has been made by, a court of a state having jurisdiction under §§ 36-6-216--36-6-218, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to §§ 36-6-216--36-6-218, upon being informed that a child custody proceeding has been commenced in, or a child-custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

The parties informed the Circuit Court that such communication had taken place.

Based upon the record before us, we cannot conclude that the Juvenile Court erred in its exercise of emergency jurisdiction pursuant to Tenn. Code Ann. § 36-6-219.

## VII. ON REMAND

This dependency and neglect action will return to the Juvenile Court, and its adjudication and dispositional orders are reinstated. It is likely that Father will ask that court to end its exercise of temporary emergency jurisdiction.[15]

If Father seeks to end the emergency jurisdiction by presenting an order from the California court regarding Lillian's custody that was entered **after** the Tennessee Juvenile Court exercised its jurisdiction, the court will have to determine whether Tenn. Code Ann. 36–6–219(c) applies. In essence, the Juvenile Court will have to decide whether the earlier California custody orders are "entitled to be enforced under this part."

Similarly, if Grandparents ask the Juvenile Court to exercise continuing jurisdiction under the UCCJEA regardless of the end of its emergency jurisdiction, the court will also be required to examine the various jurisdictional statutes.

Simultaneous proceedings in courts of different states is one of the problems that uniform statutes on custody were designed to cure. The Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA), which has been adopted in both California and Tennessee, as well as in all fifty states in some form, *McKinnon,* 206 S.W.3d at 545, is designed to

> (1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
> (2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;
> (3) Discourage the use of the interstate system for continuing controversies over child custody;
> (4) Deter abductions of children;
> (5) Avoid relitigation of custody decisions of other states in this state; and
> (6) Facilitate the enforcement of custody decrees of other states.

---

[15]Because the Juvenile Court did not set out a period of time in which its order would be in effect, it is deficient because it does not meet the statutory requirements. The Juvenile Court should attempt to correct that deficiency, but we anticipate that other issues regarding the duration of the temporary emergency jurisdiction may make the deficiency in the order moot.

Tenn. Code Ann. § 36-6-202.[16]

     To that end, the UCCJEA establishes priorities to be applied in determining jurisdiction. The situation in the case before us requires the application of the provision of the UCCJEA that sets out the relevant priority by preserving the jurisdiction of the state that makes an "initial determination" of custody. Since a California court entered the first order regarding the custody of Lillian, the applicable provision is found at Tennessee Code Annotation § 36-6-221, which is entitled "Previously commenced proceedings," and provides:

> (a) Except as otherwise provided in § 36-6-219[17], a court of this state may not exercise its jurisdiction under this part if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this part, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under § 36-6-222.

     The statute also requires the Tennessee court to examine documents from the other state and stay its proceedings to communicate with the court of the other state. If that court does not determine that the Tennessee court is a more appropriate forum, the Tennessee court must dismiss the proceeding. Tenn Code Ann. § 36-6-221(b).

     When Grandparents filed their dependency and neglect petition in the Tennessee court, the California court had already issued an order (and more than one) regarding the custody of Lillian. Grandparents' petition was filed as a counterclaim in the custody proceedings that had been initiated by Father shortly after Mother's death. When Father's petition was filed in Tennessee, Father and Mother had commenced proceedings in the California court more than a year earlier, and that court had entered an order establishing custody and visitation. Thus, "at the time of the commencement of the proceeding [in Tennessee], a proceeding concerning the custody of the child [had] been commenced in a court of another state." Tenn. Code Ann. § 36-6-221(a).

---

[16]For the purposes of this case, Tennessee's version of the UCCJEA is identical to California's, which is codified at California Family Code §§ 3400 *et seq*.

[17]Tenn. Code Ann. § 36-6-219 is the emergency jurisdiction provision.

Thus, the question becomes whether the California court, at the time it entered the orders, had jurisdiction substantially in conformity with the provisions of the UCCJEA. The UCCJEA authorizes a court to make an initial determination of custody for a particular child, if the state in which the court is located is the "home state" of the child on the date of the commencement of the proceeding, or was the home state of the child within six months of the commencement of the proceeding, and certain other conditions are met, including that no other state can claim jurisdiction as the child's "home state." Tenn. Code Ann. § 36-6-216(a).

The UCCJEA defines the home state of a child as follows:

"Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six (6) months of age, "home state"means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

Tenn. Code Ann. § 36-6-205(7).

Mother filed a petition on January 13, 2009, in the California court to establish parentage and for child support. The petition and summons indicated that Mother and Father were both residents of California and that the action was brought in that court because the child "resides or is found in the county." Mother signed at the bottom of the document "under penalty of perjury." A form called a Declaration Under UCCJEA indicated that Mother had been a resident of California since January 12, 2009, obviously not six months.

The record that we have does not include any court orders for a year from January 2009 until January 2010. Mother and Father apparently were in the California court on August 17, 2009, when they stipulated as to a partial custody investigation. A year after Mother's initial petition, both Mother and Father appeared at a hearing in the California court on January 14, 2010.

A judgment from the California court was filed April 22, 2010, from the January, 2010, hearing. The court's order adopted the parties' stipulation as to visitation, but added increased and unmonitored visitation in Tennessee for Father. The court awarded Mother sole physical custody and also sole temporary legal custody, "without prejudice to Father's rights," until a review hearing.

The April 2010 order also authorized Mother to continue living with the child with Mother's parents in Tennessee until her pending DUI charge was resolved or she completed any sentence arising therefrom. Nothing in the language of this order indicated that the court contemplated Mother's retaining custody of the child if she remained in Tennessee longer than the time set out. Neither did it indicate that Mother would do anything other than reside in California after resolution of the DUI.

Importantly, the April, 2010, order, based upon a hearing held January 14, 2010, was over a year after Mother represented to the California court that she and the child were residents of California. Nothing in the record before us indicates that Mother or Father ever reported to the court any change in the information she had provided or any other information that would cause that court to independently examine whether California was the home state.

Thus, upon remand, if requested by a party, the Juvenile Court will have to determine whether these facts, or different facts that may be presented at a hearing, demonstrate that the California court's initial exercise of jurisdiction over the custody of Lillian was in substantial compliance with the UCCJEA's jurisdiction provisions. Interpreting the statutory provisions in view of the purposes of the UCCJEA to eliminate or decrease exactly the type of interstate dispute over a child's custody that has gone on in the case before us, we think the facts known to us show "substantial compliance.".

## VIII. SUMMARY

The judgment of the Circuit Court finding Father in civil contempt and awarding attorneys fees to Grandparents for bringing that contempt is affirmed. The Circuit Court's dismissal of Father's motion to enforce a foreign judgment is also affirmed, reinstating the Juvenile Court's dependency and neglect orders. All other orders of the Circuit Court are vacated.

We remand this case to the Circuit Court of Warren County with instruction to remand the dependency and neglect action to the Juvenile Court of Warren County. Tax the costs on appeal to the appellees, Sam and Melinda W.

_____
PATRICIA J. COTTRELL, JUDGE